OPINION OF THE COURT
Carman F. Ball, J.
The petitioners, Hugh L. Carey, Governor of the State of New York, and Louis J. Lefkowitz, Attorney-General of the State of New York, seek a judicial determination as to the propriety of the publication of volumes 2 and 3 of the final report of the Special Deputy Attorney-General, Bernard S. Meyer (Meyer report), which evaluated the conduct of the investigation by the Special Prosecutor into the retaking of the Attica Correctional Facility on September 13, 1971 and related events subsequent thereto, which report contains excerpts from the minutes of the Wyoming County Grand Jury and further seeks a determination under what conditions and to what extent the court deemed just and proper to release all or any parts thereof.
Elizabeth M. Hardie and Lynda Jones, claimants in an action against the State of New York pending before the Court of Claims move: (1) for an order directing the State of New York to produce for investigation and copying by the claimants or their attorneys, volumes 2 and 3 of the final report of Special Deputy Attorney-General Bernard S. Meyer; (2) for an order allowing their attorneys to inspect the minutes of the Second Wyoming County Grand Jury investigating the conduct of the New York State personnel and correction officers during the retaking of the Attica prison on September 13, 1971; and (3) for an order of the court directing that the *319 defendant State of New York turn over to the claimants’ attorneys copies of all the debriefing statements and shooter statements taken from the State Police personnel and correction officers after the assault and retake of the Attica prison on September 13, 1971, as ordered by Justice Quigley of the New York State Court of Claims, July 1, 1977.
On the recommendation of Governor Carey, Bernard S. Meyer was appointed pursuant to section 63 of the Executive Law by the Attorney-General on April 17, 1975 as a Special Deputy Attorney-General to evaluate the conduct of the investigation by the Special Prosecutor into the retaking of the Attica Correctional Facility on September 13, 1971 and related subsequent events.
Thereafter, on October 27, 1975, Special Deputy Attorney-General Meyer rendered a report to Governor Carey and the Attorney-General consisting of three volumes containing his findings and the evidence in support thereof, together with his recommendations.
On December 22, 1975, pursuant to subdivision 8 of section 63 of the Executive Law, volume 1 of the Special Deputy Attorney-General’s report containing findings and recommendations was released to the public by the Governor and the Attorney-General.
Subsequent to the appointment of Special Deputy Attorney-General Bernard S. Meyer, Alfred J. Scotti was appointed as a Special Deputy Attorney-General on December 16, 1975 to oversee the conduct of the Attica investigation and, among other assignments, to "review evidence to determine whether indictments should be sought against law enforcement personnel and others, and to conclude all aspects of the Attica probe 'justly.’ ”
In January and February, 1976, upon Mr. Scotti’s recommendation, indictments against 24 inmates and one State trooper were dismissed. The two Grand Juries hearing the Attica prison riot evidence have been discharged.
On December 31, 1976, Governor Carey announced that he would pardon seven inmates and commute the sentence of an eighth "to close the book” on the Attica riot and further declared that based on recommendations of Superintendent of the State Police; William G. Connelie, and Corrections Commissioner, Benjamin Ward, no disciplinary action would be taken against 20 law enforcement personnel.
Release of the entire report had been recommended by both *320 Special Deputy Attorneys-General, Bernard S. Meyer and Alfred J. Scotti, allowing time to individuals named in the report for recourse to the courts. The Governor and the Attorney-General publicly stated that volumes 2 and 3 of the Meyer report be made public because it is in the public interest for the public to know what transpired to the end that confidence in our system of justice be restored.
The Governor requested the Attorney-General to take whatever legal action necessary to effect the prompt release of volumes 2 and 3 of the Meyer report which quotes Grand Jury testimony and draws conclusions based upon Grand Jury evidence.
CPL 190.25 (subd 4) prohibits disclosure of Grand Jury testimony except by court order.
Petitioner, Louis J. Lefkowitz, Attorney-General, asserts that the first volume of the Meyer report did not contain Grand Jury minutes and was given a public release. Since individuals are named in volumes 2 and 3 which contain Grand Jury minutes, the court should determine whether and under what conditions access to volumes 2 and 3 should be allowed; and if allowed, who may examine such volumes so that they may have an opportunity to take appropriate legal action prior to the determination of this motion.
The petitioner asserts that there are 83 pending cases which arose out of the Attica uprising in the Court of Claims of the State of New York and in the Federal courts against the State of New York, individual defendants, State officials and employees.
That volumes 2 and 3 contain information which may be prejudicial to the defendants whom he represents in the civil actions.
Petitioner asserts that he has a divided responsibility between a duty to the public as a public official to seek the release at the request of the Governor, and his responsibility to assume control of the representation of State officers and employees against whom actions have been brought for acts in the performance of the discharge of their duties.
Motions were made by the claimants Hardie and Jones to disclose the Grand Jury minutes before the Honorable Robert M. Quigley who held that he lacked jurisdiction and dismissed the motions in the Court of Claims.
The Attorney-General contends that in a motion before *321 Judge Quigley, the claimants Jones and Hardie sought production of the Meyer report and minutes of the Special Grand Jury and the records of the McKay commission. That Judge Quigley granted the inspection of the records of the McKay commission but made no statement with regard to either the Meyer report or the Special Grand Jury minutes and contends that he impliedly denied that part of the request.
The decision was appealed to the Appellate Division, Fourth Department, which ruled that the McKay material was protected from disclosure by the public interest privilege. That the claimants had an opportunity to test the denial by Judge Quigley and they cannot relitigate the question.
The petitioner further contends that the claimants’ purpose for obtaining Grand Jury information is purely pecuniary gain and that Grand Jury minutes are not diselosable to private litigants seeking money damages.
Petitioner further contends that disclosure of material secured from witnesses in a special (Meyer) investigation should be denied because of the public interest privilege; that the disclosure of the list of witnesses who appeared before the Second Grand Jury, as well as the Bell report, should be considered as having the same immunity from disclosure as the Grand Jury proceedings have.
The petitioner further contends that this court lacks jurisdiction to order the State to produce debriefing statements because: (1) the issue of the shooter and debriefing statements had already been decided by the Court of Claims in the order of Judge Quigley dated July 1, 1977; and (2) that according to the records of the New York State Police, they do not have the statements that were turned over to the Wyoming County Grand Juries and were offered before the Grand Juries as exhibits and are under the control of the Grand Jury.
The attorneys for the claimants Jones and Hardie assert that their claims arise out of the Attica Correctional Facility uprising on September 13, 1971. That the claims are complex: (1) that a number of key witnesses and officials have died, retired or otherwise left the employ of the State; (2) that the records of the second Wyoming County Grand Jury which investigated the use of excessive force by the State, the Meyer report and the debriefing and shooter statements all contain relevant information to the prosecution of these claims; and (3) that discovery by the claimants was prevented because of the criminal proceedings arising out of the Attica uprising; *322 that since no discovery was permitted to be undertaken for five years after the occurrence through no fault of their own, they should be allowed to discover the Grand Jury minutes and be provided with copies of the Meyer commission report as well as the debriefing statements.
The correction officers oppose the motion of the Attorney-General and claim that the Meyer report should not be released or, in the alternative, should be released only if modified to conceal the identities of correction officers mentioned therein. They further assert that Grand Jury testimony was released to the Department of Corrections by Deputy Attorney-General Scotti pursuant to an order of this court, but the Department of Corrections determined not to discipline any of the officers. That since no correction officer was indicted or disciplined, to name them publicly now would be unfair and lay them and their families open to public scorn and they would be unable to defend themselves as provided when a person is mentioned in a Grand Jury report the opportunity to add his own response to the report.
Robert Fischer, pro se, who as Special Deputy Attorney-General conducted the proceedings up to December 30, 1973, appears in this proceeding and contends that in the exercise of the sound discretion of this court that broad public interest would best be served by not permitting selected excerpts from the Grand Jury minutes chosen to support conclusions of selected officers to be made public, rather the release of all minutes and records of the Grand Jury, as well as the records and minutes of Meyer’s hearings which will not only best serve the public interest but which will best serve the interest of those officers who pursued the Attica investigation until its withdrawal from the judicial system.
Fischer contends that Mr. Meyer could not reveal the nature or substance of any Grand Jury testimony except in the lawful discharge of his duties as a District Attorney unless authorized by court order and contends that the Governor lacks access to Grand Jury proceedings pursuant to subdivision 8 of section 63 of the Executive Law without a court order.
That it was the acts of the executive in withdrawing the issues from the courts that has prevented full disclosure; that rather than releasing selected portions of the Grand Jury minutes to support the Meyer report, that access be given to the secret minutes and records to support Meyer’s findings.
*323 Bernard S. Meyer, pro se, in support of the release of volumes 2 and 3 asserts that the Governor has directed its release, that this court is without power to make a contradictory direction and that the power of the Governor to release is independent of any direction by a court countermanding his direction.
That the purpose of his investigation grew out of charges made by the former Assistant Attorney-General Malcolm Bell, causing the integrity of the criminal justice system of the State to be called into question by the charges he made.
Governor Carey in granting clemency to the accused inmates and sanctioning the withholding of disciplinary proceedings against State personnel to bring the Attica matter to a close, recognized that directing a release of volumes 2 and 3, there was public interest involved in knowing the extent to which criminal justice, prison and police systems were or were not lacking in integrity.
That the reasons for protection of the Grand Jury minutes have all been obviated in the instant case except as protection of ifche individuaFs reputation and that the private interest of relatively few individuals can be adequately protected by redaction and in any event is completely outweighed in any balancing process by the necessity for restoring confidence in the criminal justice system, prison system and the State Police.
He further contends that the potential liability of the State in pending lawsuits is no reason to prohibit the release of the volumes in issue.
That no promise of confidentiality was authorized by the executive order which resulted in the Meyer report, nor were persons interviewed made any promise of confidentiality.
That the protection against condemnation by the report is not absolute; the essential is fairness to the persons involved.
That under subdivision 8 of section 63 of the Executive Law, the appointee inquires into matters concerning the public peace, public safety and public justice, which may be deemed a higher public interest than that involved in the report of a Grand Jury.
The issue presented to this court is whether Grand Jury minutes should be released either in the Meyer report or to claimants as part of and in aid of discovery in civil proceedings.
*324 Grand Jury minutes by statute (CPL 190.25, subd 4) and by decision are secret and may only be inspected or disclosed upon order of the court, as stated by the court in People v Di Napoli (27 NY2d 229, 234, 235):
"We start with the proposition that secrecy of grand jury minutes is not absolute. Under section 952-t of the Code of Criminal Procedure, a copy of the minutes may be furnished to 'any * * * person * * * upon the written order of the court’. Firmly settled is the rule that determination of the question whether disclosure should be permitted is addressed to, and rests in, the trial judge’s discretion * * * In exercising this discretion, the court must balance the competing interests involved, the public interest in disclosure against that in secrecy.”
"Ranged against these considerations are the reasons for maintaining the secrecy or confidentiality of grand jury minutes. Those most frequently mentioned by courts and commentators are these: (1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely.”
The Governor and the Attorney-General may in the discretion of the court inspect Grand Jury minutes. (Matter of Attorney-General of State of N. Y., 145 Misc 331; People v Behan, 37 Misc 2d 911.)
The Legislature may authorize the Governor or the Attorney-General to conduct investigations for the sole purpose of securing information to advise executive action. (Executive Law, § 63, subd 8; Matter of Sigety v Hynes, 38 NY2d 260; Ward Baking Co. v Western Union Tel. Co., 205 App Div 723.)
Bernard Meyer, as the Governor’s designee, obtained access to the Grand Jury minutes as a superseding District Attorney, in that capacity he was restrained from making the minutes available to the Governor pursuant to CPL 190.25 (subd 4) which provides: "Grand jury proceedings are secret, and no grand juror or other person specified in subdivision three may, except in the lawful discharge of his duties or upon written *325 order of the court, disclose the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding”; and section 325 of the Judiciary Law: "to furnish to the district attorney * * * a full copy of all such testimony as such district attorney shall require, but he shall not permit any other person to take a copy of the same, nor of any portion thereof, nor to read the same, or any portion thereof, except upon the written order of the court duly made after hearing the said district attorney * * * When so impounded, such original notes, minutes, and exhibits shall not be taken from the custody of such judge or such public officer except upon the order of such judge * * * Except as above provided, all of the said original notes and minutes shall be kept in custody of said district attorney, and neither the same, nor a copy of the same, or any portion of the same, shall be taken from the office of said district attorney, excepting as above provided.”
Section 63 of the Executive Law provides in pertinent part as follows:
"The attorney-general shall * * *
"2. Whenever required by the governor, attend in person, or by one of his deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal action or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all of the powers and perform all of the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform * * *
"8. Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice * * * The attorney-general, his deputy, or other officer, designated by him, is empowered to subpoena * * * under oath before himself or a magistrate and require [the production of] books * * * or papers * * * It shall be the duty of all public officers, their deputies, assistants and subordinates, clerks and employees, and all other persons, to render and furnish to the attorney-general, his deputy or other designated officer, when requested, - all information and assistance in their possession and within their power * * * Any officer participat *326 ing * * * and any person examined as a witness * * * who shall disclose to any person other than the governor or the attorney-general the name of any witness examined or any information obtained upon such inquiry, except as directed by the governor or the attorney-general, shall be guilty of a misdemeanor.” (Emphasis added.)
This court has found no authority which permits the Governor or his designee pursuant to subdivision 8 of section 63 of the Executive Law to examine or disclose Grand Jury testimony without permission of this court. (See People v Di Napoli, supra; Ward Baking Co. v Western Union Tel. Co., 205 App Div 723, supra; Matter of Scotti, 53 AD2d 282.)
Alfred J. Scotti, Special Deputy Attorney-General, made application to this court to release Grand Jury testimony for the purpose of departmental disciplinary action, which was granted. The court stated in Matter of Scotti (53 AD2d 282, 289): "We note, however, that in the third sentence of paragraph 7 of the affidavit of respondent Scotti in support of the application for transmittal of minutes to the Commissioner of the Department of Correctional Services, he expressed a conclusion which is not supported by the testimony in the specified minutes. This prompts the admonition that it is the minutes of testimony which are transmitted to the superintendent and the commissioner, and that conclusory statements by respondent Scotti concerning the content of the minutes, contained in the application for the orders, should be accorded no weight by the superintendent or the commissioner. We add a further note of warning to the superintendent and commissioner to whom these minutes are released — the release orders carefully restrict the use of the minutes. In all other respects these minutes remain secret, and utmost care must be taken to insure that they are used in no manner except as speciñed and are not permitted to be seen or used by any other person. ” (Emphasis added.)
Although the Meyer report was prepared prior to the above decision, the use of selected Grand Jury minutes included in the Meyer report would in effect circumvent the admonitions contained in the Scotti decision.
Had an application been made to this court, inspection of the Grand Jury minutes would have been granted as in the Scotti case with proper safeguards to the individuals named therein.
The courts have generally refused to permit disclosure of
*327 Grand Jury minutes unless the moving party was connected with law enforcement. (See, e.g., Albert v Zahner’s Sales Co., 81 Misc 2d 103.)
Disclosure has been made to those investigating the malfeasance of a public official (see, e.g., People ex rel. Hirschberg v Board of Supervisors of County of Orange, 251 NY 156, 170-171; Matter of Quinn, 293 NY 787, affg 267 App Div 913); a police commissioner investigating police corruption (e.g., Matter of City of New Rochelle, 35 Misc 2d 254; Matter of Scro, 200 Misc 688); to the Governor’s special investigating counsel (Matter of Crain, 139 Misc 799); and to grievance committees of the various Appellate Divisions.
However, when the enforcement-investigative prerequisite has not been met and only private interests are at stake the courts have been firm in holding that the strong public policy, originating in the earliest history of the State, is not overcome by the showing of merely "a public interest.” Thus, disclosure was denied to a committee of the Association of the Bar of the City of New York (People v Ewald, 144 Misc 657); to a Judge charged with bribery (Matter of Martin, 170 Misc 919); to the Erie County Bar Association (Matter of Bar Assn. of Erie County [Hagerty], 182 Misc 529); to the Corporation Counsel of Buffalo for the purpose of civil suit (People v Pankow, 17 Misc 2d 143); and to a County Executive (Matter of Temporary State Comm. of Investigation, 47 Misc 2d 11).
The court is mindful of the Governor’s responsibility to enforce the law, but, in the exercise of that responsibility, pursuant to section 63 of the Executive Law, the Governor and/or the Attorney-General or his deputies cannot usurp judicial discretion.
The Governor, the Attorney-General or Bernard Meyer could not have meant to make a commitment to release Grand Jury testimony in a report in order to fulfill a promise that the Meyer report would be made public. The first volume of the Meyer report was premised on an examination of Grand Jury minutes without the benefit of a court order. The requested release of Grand Jury minutes in volumes 2 and 3, in effect, would be an order of disclosure nunc pro tunc.
The courts have consistently held that judicial discretion may be exercised in favor of disclosure only upon a factual showing of compelling need. The public interest, past, present and future, in maintaining the secrecy of the Grand Jury *328 proceedings cannot be overcome or outweighed by the assertion of good cause.
The purpose stated for the need for the disclosure of selected portions of the Grand Jury testimony is to support the Meyer report because of the alleged public interest involved in knowing the extent to which criminal justice, prison and police systems were or were not lacking in integrity.
Attica has been investigated by the McKay commission, the Goldman commission and Special Deputy Scotti, all of whom have issued reports.
The Executive Department after receiving the Grand Jury minutes requested by Scotti did not take any disciplinary action.
The Governor, based in part upon the Meyer report, pardoned and commuted defendants who were convicted, and dismissed inquiring Grand Juries and removed from the courts public trial of their indictments and precluded any disciplinary action against public officers. There is no pending law enforcement function to be performed pertaining to Attica. (Except the trial of People v Gonzales, Ind. 616, 1973.)
This court has made an in camera inspection of the Meyer report which refutes the accusations made by Malcolm Bell and contains selected Grand Jury testimony claimed to support the findings of Bernard Meyer’s personal opinions and conclusions as to the veracity and judgment of the persons involved and does not set forth the full story dealing with Attica. The report names individuals and is critical of their actions and decisions supported by selected parts of Grand Jury testimony.
This court has previously found that a report of the Grand Jury failed to comply with CPL 190.85 in that it did not recommend disciplinary proceedings nor recommend legislative action.
In the application of the Matter of Bar Assn. of Erie County (Hagerty) (182 Misc 2d 529, 535-536, supra), where the Bar Association sought to examine the minutes of the Grand Jury in an effort to promote legal reform and facilitate the administration of justice, the court denied the Bar Association’s request: "If the court establishes the precedent sought by the petitioner, can it at some later date deny a similar motion made by other membership corporations, many of whose purposes are no less lofty or idealistic, as concerns public *329 interest * * * A desire 'to promote reforms in the law and facilitate the administration of justice’ is not a virtue peculiar to ourselves as lawyers, but is common to all persons * * * [i]t matters not that the January, 1944, Erie County grand jury has finished its work and been discharged. What does matter is that hundreds of grand juries are to follow this Grand Jury. The work of these juries must not be impaired * * * [t]hey must not be deterred in their function through fear that the recorded minutes of their proceedings might be scrutinized by others than those now determined by the courts of this State as being proper persons to examine the minutes of grand juries.”
The court finds that the release of selected portions of evidence before the Grand Jury in the report, together with evidence not before the Grand Jury, without giving persons criticized in the report the opportunity to cross-examine, refute or submit evidence, is unfair; and further, to allow one person to determine the facts and the law, to condemn and absolve can only precipitate debate in the public minds as to what happened in Attica. Rather than closing the book, it is opening Pandora’s box.
The inherent unfairness involved in criticizing public officials who were not under indictment and have no forum for presentation of evidence for refutation was pointed out in Matter of Wood v Hughes (9 NY2d 144, 154, 148, n 1):
"In the public mind, accusation by report is indistinguishable by indictment and subjects those against whom it is directed to the same public condemnation and opprobrium as if they had been indicted”.
"It is not a criminal accusation, grounded on legally sufficient evidence of the violation of a criminal statute, to which answer may be made in court; it is rather a moral condemnation of exhortation without any forum being provided for explanation or defense.”
The Legislature has set down specific guidelines for Grand Juries to make reports where no indictments have been found, in order to protect the innocent. There are no similar guidelines made with respect to reports made by investigating committees or designees set up under subdivision 8 of section 63 of the Executive Law which, as here, raises strong questions of due process of law with respect to those persons whose reputations can be impaired without the benefit of a hearing. (See Wisconsin v Constantineau, 400 US 433.)
*330 The court finds that the public interest lies not in the disclosure of selected excerpts of Grand Jury testimony for the purpose of supporting conclusions of the Meyer report, but rather in guarding the secrecy of Grand Jury minutes. Therefore, the petitioner is directed to redact and exclude any and all reference to Grand Jury testimony from the Meyer report, volumes 2 and 3.
Any exhibit ordered produced in any court action which was used before the Grand Jury is hereby released and such release is limited to the exhibits themselves and do not include Grand Jury testimony concerning them. The request for the names of the Grand Jury witnesses is denied.
The court finds that the claimants’ request for examination of the Grand Jury minutes is a request in aid of private litigants seeking money damages and is denied. (See Matter of City of Buffalo [Cosgrove], 57 AD2d 47; Herring v City of Syracuse, 81 Misc 2d 1060.)
The court further finds that volumes 2 and 3 of the Meyer report without the Grand Jury minutes or references thereto be made available to those persons who are named in the report 30 days prior to the release of the report so that they may be afforded the same rights as provided for persons named in a Grand Jury report.