In the Matter of HUGH L. CAREY, as Governor of the State of New York, et al., Appellants-Respondents, Relating to the Publication of Volumes 2 and 3 of the Final Report of BERNARD S. MEYER, as Special Deputy Attorney-General. ROBERT E. FISCHER, as Special Deputy Attorney-General, et al., Respondents-Appellants; STATE OF NEW YORK et al., Appellants.

Fourth Department, May 22, 1979

### APPEARANCES OF COUNSEL

*Bernard S. Meyer (Alfred J. Scotti* and *Paula S. Frome* of counsel), for Hugh L. Carey, appellant-respondent.

*Robert Abrams, Attorney-General (Jeremiah Jochnowitz* of counsel), for State of New York, appellant.

*Mark K. Benenson* for Council 82, Security & Law Enforcement Employees Correction Officers, appellant.

*Robert E. Fischer,* respondent-appellant *pro se.*

*Malcolm H. Bell, pro se.*

*Hinman, Straub, Pigors & Manning (Peter Rupert* and *Bernard J. Malone, Jr.,* of counsel), for Police Benevolent Association of New York State Police, Inc., appellant.

### OPINION OF THE COURT

SIMONS, J. P.

The Governor and the Attorney-General seek permission to publish excerpts of evidence before the Wyoming County Grand Juries. The evidence is contained in volumes 2 and 3 of the Final Report of the Special Attica Investigation, known as the Meyer Report. They appeal from an order of Special Term which held them bound by the statutory provisions requiring that Grand Jury proceedings be secret (see CPL 190.25, subds 3, 4; Penal Law, § 215.70),[1] and which, as a discretionary

---

1. Subdivision 4 of CPL 190.25: "Grand Jury proceedings are secret, and no grand juror or other person specified in subdivision three may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding."

Subdivision 3 lists: (a) the District Attorney; (b) a clerk; (c) a stenographer; (d) an interpreter; (e) a public servant holding a witness in custody. The statute was amended by chapter 415 of the Laws of 1978 to incorporate those persons proscribed by amended section 215.70 of the Penal Law.

Section 215.70 of the Penal Law: "A person is guilty of unlawful grand jury disclosure when, being a grand juror, a public prosecutor, a grand jury stenographer, a grand jury interpreter, a peace officer guarding a witness in a grand jury proceeding, or a clerk, attendant, warden or other public servant having official duties in or about a grand jury room or proceeding, he intentionally discloses to another the

matter, denied permission to disclose the evidence. There are also various cross appeals seeking other or different relief. We affirm the order of Special Term.

The genesis of the Attica investigations is well known. On September 9, 1971 inmates at the Attica Correctional Facility took over a portion of the prison and held control of it until it was retaken by law enforcement personnel on September 13. After the retaking, then Governor Rockefeller directed the Attorney-General to supersede the Wyoming County District Attorney to investigate the events surrounding Attica and to prosecute those charged with Attica-related crimes. Robert E. Fischer, a respondent in this proceeding, was designated a Special Deputy Attorney-General for that purpose. He later resigned to assume judicial office and Anthony Simonetti succeeded him. The Meyer Report was an investigation of the Attica prosecution during the period that Judge FISCHER and Special Deputy Simonetti headed it. The investigation was precipitated by the resignation of respondent, Malcolm H. Bell, a Special Assistant Attorney-General and a member of the Attica prosecutorial staff, who publicly criticized the handling of the prosecution, specifically the investigation and prosecution of crimes allegedly committed by law enforcement personnel. He charged that the prosecution "lacked integrity" and he amplified his charges in a written report submitted to the Governor. Appellants responded by appointing former State Supreme Court Justice BERNARD S. MEYER as a Special Assistant Attorney-General on April 17, 1975 and directing him to "evaluate the conduct of the investigation into the retaking of the Attica Correctional Facility on Sept. 13, 1971, and related events subsequent thereto." When Judge MEYER finished his investigation in October, 1975, he reported the results in a three-volume 570-page report. The first volume contained his findings and recommendations and was published on December 22, 1975. It did not contain quotations from the minutes of the Wyoming County Grand Juries. The second and third volumes, which appellants now propose to release, provide the factual basis for Judge MEYER's conclusions in volume 1 and contain quotations of Grand Jury testimony and references to Grand Jury testimony.

---

nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding which is required by law to be kept secret, except in the proper discharge of his official duties or upon written order of the court." The statute was amended by chapter 451 of the Laws of 1977 to include within the publication "a public officer or a public employee".

On December 16, 1975 Alfred J. Scotti was appointed Special Deputy Attorney-General to carry out the recommendation of the Meyer Report that Attica convictions, pending indictments and possible future indictments be reviewed to determine what steps should be taken to assure evenhanded prosecution of crimes committed at Attica. At that time Governor Carey and Attorney-General Lefkowitz made clear, as they had when they received the Meyer Report, that the entire report was to be made public upon the conclusion of the investigation.

Subsequently, Mr. Scotti recommended dismissal of all but one of the pending indictments, stating that the investigation by the State Police immediately after the retaking was too deficient to permit the successful prosecution of crimes committed by law enforcement personnel during the retaking. He also recommended executive clemency for eight inmates convicted of Attic-related crimes and he recommended disciplinary action against eight State troopers, two State Police officers, eight correction officers and two correction employees. On December 31, 1976 Governor Carey pardoned seven inmates and granted executive clemency to an eighth. He requested the Attorney-General to take whatever legal action was necessary to effect prompt release of volumes 2 and 3 of the Meyer Report and this application followed.

Special Term's order insofar as we are concerned with it on this appeal ordered redaction of all references to Grand Jury testimony from the Meyer Report, directed that volumes 2 and 3 as redacted then be submitted to all persons criticized in the report 30 days prior to publication, and that the report not be released until further order of the court. The obvious purpose of these directions was to assist the court and assure that redaction was complete before publication was permitted.

Appellants challenge Special Term's order on two grounds. First, they submit that inasmuch as the Governor now has possession[2] of portions of the Grand Jury minutes and nothing in the statutes prohibits him from publishing them, he may do so without the necessity of a court order. Further than that, they assert that even if it can be said that the court may monitor the use of Grand Jury evidence in the Governor's

---

2. The facts of the case differ in this respect from the gubernatorial application considered in *Matter of Third, Dec., 1959 Grand Jury* (20 Misc 2d 475) and *Matter of Attorney-General of State of N. Y.* (145 Misc 331).

hands, the sole standard by which the court may judge his action is reasonableness (see *Matter of Pell v Board of Educ.,* 34 NY2d 222, 231), and the proposed publication is reasonable because the public interest requires the release of the entire Meyer Report, including Grand Jury evidence. Appellants have volunteered to redact individual names appearing in the report, as necessary, to avoid injury to reputations. We deem such action at this time to be a matter for appellants' determination, not the court's.

I

We conclude that the Governor is bound by the statutory requirement that Grand Jury proceedings are secret. Pertinent to our decision are two discrete subdivisions of section 63 of the Executive Law, subdivisions 8 and 2.

Subdivision 8 of section 63 provides that the Attorney-General may, and when directed by the Governor he shall, inquire into matters "concerning the public peace, public safety and public justice" when the public interest requires it. The subdivision was originally enacted as a war measure to enable the executive to cope with sabotage and subversion at the time of World War I. It has remained in effect continuously since then and the Court of Appeals has construed it as having general application *(Matter of Sigety v Hynes,* 38 NY2d 260, cert den 425 US 974; *Matter of Di Brizzi [Proskauer],* 303 NY 206; but see *Matter of Friedman v Hi-Li Manor Home for Adults,* 42 NY2d 408). The subdivision confers general investigative powers and provides a means whereby the Governor and the Attorney-General may acquire information to guide them in the performance of their executive duties.

Subdivision 2 of section 63 serves quite another purpose. It authorizes the Governor to direct the Attorney-General to supersede local District Attorneys. That subdivision is based upon the Governor's historic duty to see that the laws are enforced (NY Const, art IV, § 3; and see *Mulroy v Carey,* 58 AD2d 207, 212, affd 43 NY2d 819; Pitler, Superseding District Attorneys in New York City—The Constitutionality and Legality of Executive Order No. 55, 41 Fordham L Rev 517, 520-521). An Attorney-General who supersedes a local District Attorney is empowered to manage and conduct specified criminal actions and proceedings and for that purpose he, or his deputy, steps into the shoes of the local District Attorney and exercises all powers and performs all duties with respect

thereto that the local District Attorney would otherwise perform. The Special Deputy Attorney-General's access to Grand Jury evidence and his disposition of it in the matters in which he is authorized to act is the same as that possessed by the superseded District Attorney (CPL 1.20, subd 32). A designee of the Attorney-General acting under subdivision 8, however, does not step into the shoes of a District Attorney, for subdivision 8 is not intended to be used to initiate the criminal indictment or prosecution of any individual (see *Matter of Di Brizzi [Proskauer]*, 303 NY 206, 216-217, *supra; Matter of Sigety v Hynes*, 38 NY2d 260, 266, *supra; Ward Baking Co. v Western Union Tel. Co.*, 205 App Div 723, 728-729).

Special Deputy Attorney-General Meyer did not supersede the District Attorney of Wyoming County (or respondent Fischer or Simonetti). His appointment was made "in connection with" the prior gubernatorial executive orders appointing respondent Fischer, but he was not directed to prosecute crimes committed during the Attica uprising and retaking and he did not undertake to do so. His function was to investigate respondent Bell's charges pursuant to subdivision 8 of section 63 and when he concluded his investigation, the Attorney-General appointed Special Deputy Scotti to take over responsibility for the Attica prosecutions and conclude them.

There is a serious question, therefore, whether the Special Deputy Attorney-General was entitled to access to the Grand Jury minutes or to deliver excerpts of them to the Governor without a court order.[3] Special Term did not believe that he was (92 Misc 2d 316, 324-325). Whether or not that be so, we need not now decide. Regardless of how the Governor obtained the evidence, the statutory command is that Grand Jury

---

3. Appellants assert the following statutory language authorizes the Attorney-General's receipt of the evidence and his delivery of it to the Governor. Subdivision 8 of section 63 of the Executive Law: "It shall be the duty of all public officers, their deputies, assistants and subordinates, clerks and employees, and all other persons, to render and furnish to the attorney-general, his deputy or other designated officer, when requested, all information and assistance in their possession and within their power. Each deputy or other officer appointed or designated to conduct such inquiry shall make a weekly report in detail to the attorney-general, in form to be approved by the governor and the attorney-general, which report shall be in duplicate, one copy of which shall be forthwith, upon its receipt by the attorney-general, transmitted by him to the governor. Any officer participating in such inquiry and any person examined as a witness upon such inquiry who shall disclose to any person other than the governor or the attorney-general the name of any witness examined or any information obtained upon such inquiry, except as directed by the governor or the attorney-general, shall be guilty of a misdemeanor."

proceedings are secret and nothing contained in subdivision 8 expressly or implicitly authorizes the Governor's access to such evidence or gives him the power to disclose it. Nor should we construe the statute broadly to accomplish that purpose, for it makes little sense to impose the obligation of secrecy on those directly concerned with the Grand Jury but permit it to be circumvented once delivery of the evidence has been made to others.[4] Significantly, recent amendments to the CPL and the Penal Law strengthen the secrecy requirements of those statutes by expanding the restrictions to include all public officers and public employees (see L 1977, ch 451; L 1978, ch 415). Manifestly the statutes express the legislative intention that the secrecy of Grand Jury minutes be carefully guarded and that any decision for disclosure be made by a court, not by the District Attorney, by a Special Deputy Attorney-General superseding him, or even by the Governor.

Furthermore, nothing said by this court in *Mulroy v Carey* (58 AD2d 207, *supra)* should be construed as holding that the Governor has implied or inherent power to obtain Grand Jury evidence or disclose it without prior judicial approval. The decision in that case related only to the Governor's authority to supersede a local District Attorney. The Grand Jury constitutes a part of the court impaneling it (CPL 190.05) and fundamental principles of separation of powers require prior court approval before the Governor discloses Grand Jury evidence.

The leading case permitting disclosure of Grand Jury evidence is *People v Di Napoli* (27 NY2d 229). In *Di Napoli,* certain contractors were convicted of conspiring to rig bids on work performed for various public utilities. The Court of Appeals authorized delivery of the related Grand Jury testimony to the Public Service Commission for assistance in its determination of whether the utilities had charged customers "just and reasonable rates" or whether the rates were affected by costs resulting from rigged bids. By analogy, the limited abridgment of the Grand Jury's secrecy permitted in *Di Napoli* has already taken place in this case; in the public interest the evidence of the Attica Grand Juries has been released to Special Deputy Attorney-General Meyer and by him to the Governor so that the State's executive officers

---

4. Even the courts are without power to permit disclosure of Grand Jury evidence in some cases (see *Matter of Proskin v County Ct. of Albany County,* 30 NY2d 15).

might be advised on respondent Bell's charges and the Attica investigation generally.

## II

Holding as we do that the Governor is bound by the secrecy requirement of CPL 190.25 (subd 4), we next determine whether Special Term abused its discretion in denying appellants' application to publish the Grand Jury evidence contained in volumes 2 and 3 of the Meyer Report.

The customary reasons for requiring secrecy (and therefore the pertinent considerations for a court in exercising its discretion to release or not release) are set forth in *People v Di Napoli (supra,* p 235), "Those most frequently mentioned by courts and commentators are these: (1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely. (See, e.g., *People ex rel. Hirschberg v. Board of Supervisors,* 251 N. Y. 156, 165; *Matter of Temporary State Comm. of Investigation,* 47 Misc 2d 11, 14, *supra; Matter of Attorney-General of U. S.,* 160 Misc. 533, 534; *People v. Ewald,* 144 Misc. 657, 660; *United States v. Amazon Ind. Chem. Corp.,* 55 F. 2d 254, 261; see, also, 8 Wigmore, Evidence [McNaughton Rev., 1961], §§ 2360-2362.)"

In authorizing release of the evidence to the Public Service Commission in *Di Napoli,* the court noted that the criminal prosecutions had been completed and there was no danger that escape, interference with the Grand Jury's deliberations, perjury or subornation would result from the disclosure. Nor was there a need to protect innocent persons. The only consideration militating against release was the possibility that if permitted, disclosure would have a "chilling effect" on the ability of future Grand Juries to obtain the co-operation of witnesses. The court found that factor alone did not outweigh the obvious public purpose to be served by delivery of the evidence to the Public Service Commission.

The present case differs from *Di Napoli* in three respects.

First, in this case there is a continuing need to protect unindicted individuals from unfounded accusations against them because some of the evidence pertinent to Judge MEYER's investigation relates to individuals who were accused but no-billed by the Grand Jury. Furthermore, because the proceedings terminated before the investigation was concluded, some accusations were never resolved one way or the other. They remain in limbo. Perhaps, with skillful redaction, the identity of the affected persons could be concealed and their reputations protected, but it is doubtful that it could be done successfully given the extensive writing that has occurred on the subject of Attica.

Second, the nature of the disclosure sought here far exceeds anything previously authorized by any court. For example, the courts have authorized release of Grand Jury testimony to official agencies for limited investigative purposes (*Matter of Temporary State Comm. of Investigation,* 47 Misc 2d 11; *People v Behan,* 37 Misc 2d 911 [to the State investigation commissions]; *Matter of Crain,* 139 Misc 799 [to State for investigation for fish and food markets]; *Matter of Attorney-General of U. S.,* 160 Misc 533 [to Attorney-General to investigate fraud by a title company]), and they also have authorized the release of testimony of or concerning public officials to their superiors for disciplinary purposes (see *People ex rel. Hirschberg v Board of Supervisors,* 251 NY 156, 170-171; *Matter of City of New Rochelle,* 35 Misc 2d 254; *Matter of Scro,* 200 Misc 688; *Matter of People ex rel. Sawput Gymnasium,* 60 NYS2d 593). Indeed, this court recently authorized release of the Grand Jury minutes in these same Attica investigations to the Division of State Police, but in doing so, we limited the disclosure, specifying that the minutes were to be used for departmental discipline and no other purpose (*Matter of Scotti,* 53 AD2d 282, 285, 289, *supra;* cf. *Matter of City of Buffalo,* 57 AD2d 47). No case is cited, however, in which a court has authorized dissemination of Grand Jury evidence to the public generally or even a substantial segment of the public. Perhaps the closest that any court has come to permitting public release of Grand Jury evidence was the disclosure permitted to a group of interested citizens who sought removal of a village tax collector (*Matter of Quinn [Guion],* 293 NY 787, affg 267 App Div 913). But even in that case the disclosure was to resident taxpayers who had initiated a statutory removal proceeding pursuant to section 36 of

the Public Officers Law so that they might prosecute a court action. Significantly, Chief Judge FULD, speaking for the court in *Di Napoli (supra,* p 237), cautioned, "Quite obviously, our affirmance [of the Appellate Division's order authorizing release of the testimony to the commission] will not sanction any general disclosure or widespread publication of the minutes." Appellants here seek precisely that which the Chief Judge said was impermissible, generalized publication of portions of Grand Jury evidence.

Third, it is appropriate to look at the public interest to be served by granting this application. Appellants assert that publication of the Meyer Report in full is necessary because of "the strong public interest involved in knowing the extent to which the criminal justice, press and police systems were or were not lacking in integrity" during the Attica investigation. They assert that volumes 2 and 3 of the Meyer Report are meaningless unless the Grand Jury evidence is included.

The public's access to knowledge and the confidence it has in the conduct of public officials are matters of first importance in a democratic society. The cases demonstrate, however, that such considerations are customarily present in applications of this nature to a greater or lesser degree (see, e.g., *Matter of City of Buffalo,* 57 AD2d 47, *supra; Matter of Grand Jury of Erie County,* 192 Misc 857; *Matter of Bar Assn. of Erie County [Hagarty],* 182 Misc 529; *Matter of Attorney-General of State of N. Y.,* 145 Misc 331). They do not necessarily justify disclosure. No less important is the obligation of the judicial branch of government to protect the reputations of persons accused of crimes but not indicted or convicted,[5] and to protect the court's investigative machinery. The secrecy of the Grand Jury is jealously guarded because the confidentiality of its proceedings must be ensured if it is to continue to be effective. Particularly is that so in investigations such as this which are the subject of broad publicity and which are highly sensitive. The Attica uprising, and the investigations and the criminal proceedings which followed it, were unique in the history of this State. No similar prosecution may ever occur in the future. But if it should, those persons possessing needed evidence must have the assurance that they may come forward without fear of reprisal or intimidation. An able Trial Justice, experienced with Attica matters, has weighed these

---

5. Special Term indicated secrecy of the minutes was necessary to protect those public officials Bell criticized but that consideration would not prevent disclosure.

competing considerations, each singularly important to a free government, and in a thoughtful decision he has ruled against publication of the Grand Jury evidence. After examining the record, we are not able to say that he abused his discretion when he made that decision.

The order, insofar as appealed, should be affirmed.

DOERR, J. (dissenting). I agree with the majority that indiscriminate dissemination of Grand Jury minutes and proceedings should not be permitted and that generally such disclosure lies in the sound discretion of the court. However, I would not interpret CPL 190.25 (subd 4) and the function of a Special Assistant Attorney-General appointed pursuant to subdivision 8 of section 63 of the Executive Law as narrowly as have my colleagues.

Section 3 of article IV of the New York State Constitution commands that the Governor "shall take care that the laws are faithfully executed." Subdivision 8 of section 63 of the Executive Law in pertinent part provides: "Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice. * * * The attorney-general, his deputy, or other officer, designated by him, is empowered to subpoena witnesses, compel their attendance, examine them under oath before himself or a magistrate and require that any books, records, documents or papers relevant or material to the inquiry be turned over to him for inspection, examination or audit, pursuant to the civil practice law and rules. * * * It shall be the duty of all public officers, their deputies, assistants and subordinates, clerks and employees, and all other persons, to render and furnish to the attorney-general, his deputy or other designated officer, when requested, all information and assistance in their possession and within their power. * * * Any officer participating in such inquiry and any person examined as a witness upon such inquiry who shall disclose to any person other than the governor or the attorney-general the name of any witness examined or any information obtained upon such inquiry, except as directed by the governor or the attorney-general, shall be guilty of a misdemeanor."

While the historical backdrop of subdivision 8 of section 63 of the Executive Law noted by the majority indicates a unique genesis, the Legislature has never proposed repeal and in fact

its general application has long been sanctioned by the Court of Appeals. Although the issue is now moot, since Judge MEYER has seen the Grand Jury minutes of the Attica investigation and the Governor has seen the two challenged volumes of the Meyer Report, there would appear to be sufficient statutory authority to justify that which has already been accomplished (see *People v Behan,* 37 Misc 2d 911).

The traditional secrecy of Grand Jury minutes has long been dictated by statute and public policy. Neither is sacrosanct.

CPL 190.25 at the time the Governor decided to seek the release of volumes 2 and 3 provided: "4. Grand jury proceedings are secret, and no grand juror or other person specified in subdivision three may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, or any decision, result or other matter attending a grand jury proceeding. For the purpose of assisting the grand jury in conducting its investigation, evidence obtained by a grand jury may be independently examined by the district attorney, members of his staff, police officers specifically assigned to the investigation, and such other persons as the court may specifically authorize. Such evidence may not be disclosed to other persons without a court order." A careful reading of the statute indicates a prohibition against certain named persons from disclosing the nature or substance of any Grand Jury testimony without court order except when acting in the lawful discharge of their duties. The persons encompassed in the statutory language while including District Attorneys did not include the Governor (CPL 190.25, subd 3).

It is not necessary to decide whether the Governor was free to release volumes 2 and 3 because he did in fact make application to the court for a judicial determination of the propriety of the release of volumes 2 and 3 and the conditions of such release (see *Gaynor v Rockefeller,* 21 AD2d 92, 98, affd 15 NY2d 120, 131; *People ex rel. Broderick v Morton,* 156 NY 136, 144-145; *Vanilla v Moran,* 188 Misc 325, affd 272 App Div 859, affd 298 NY 796). However, I would read the statute as allowing disclosure of the nature and substance of Grand Jury testimony by the Attorney-General or his deputy who possesses the powers and authority of a District Attorney (Executive Law, § 63, subd 2) not indiscriminately but when acting in the lawful discharge of his duties *(Mulroy v Carey,* 58 AD2d

207, affd 43 NY2d 819). The Meyer Report was not prepared for the Special Grand Juries conducting the Attica investigation. It was generated independently by executive action, in the face of charges made by a former Assistant Attorney-General who worked on the Attica investigation that there had been a cover-up in that no law enforcement or correction personnel were being indicted. Of considerable importance to the issue being decided, the Wyoming County Special Grand Juries conducting the Attica investigation have long since been disbanded. All criminal prosecutions have been terminated and no disciplinary proceedings against any person or persons are pending or contemplated despite the fact that the Grand Jury minutes were given to the Department of Correction and the State Police for such possible action pursuant to court order (Matter of Scotti, 53 AD2d 282). Public policy favors secrecy of Grand Jury proceedings. However, when the reasons for maintaining secrecy have ceased to operate, revelations of the Grand Jury's doings which justice demands, may be made (People ex rel. Hirschberg v Board of Supervisors, 251 NY 156, 170; see, also, 8 Wigmore, Evidence [McNaughton rev, 1961], § 2363).

The decisional authority for breaking the secrecy of Grand Jury minutes is well stated in People v Di Napoli (27 NY2d 229, 234): "We start with the proposition that secrecy of grand jury minutes is not absolute. * * * Firmly settled is the rule that determination of the question whether disclosure should be permitted is addressed to, and rests in, the trial judge's discretion [cases cited]. In exercising this discretion, the court must balance the competing interests involved, the public interest in disclosure against that in secrecy."

Among the succinct reasons for maintaining Grand Jury secrecy spelled out in People v Di Napoli (supra, p 235), reliance on "(5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely" must be kept in perspective. To assume this means that large or even significant numbers of people, otherwise unknown to prosecutors, voluntarily came forward in the course of Grand Jury investigations to offer evidence of the commission of a crime is simply not realistic. People testify before Grand Juries because they are victims of a crime or the prosecution asks them or subpoenas them, oftentimes with an offer of immunity. This latter emphasizes, in many cases, the reluctance of people to appear and testify before Grand Juries

to offer testimony. The actual experiences encountered by the prosecutor in the Attica investigation, revealed in volumes 2 and 3 of the Meyer Report, pinpoints the ephemeral nature of this consideration. In *Matter of Scotti* (53 AD2d 282, 288, *supra),* Justice WITMER wrote: "The courts have not deemed that the policy of assuring prospective grand jury witnesses that their testimony will be kept secret (thus encouraging them to testify freely) requires a denial of the use of the minutes of grand jury testimony in the protection of the public interest. Indeed, the very nature of that testimony would reasonably lead the witnesses to anticipate some further use of it in the public interest. Thus, throughout the years, disclosure of grand jury testimony has been authorized in a broad range of public interest matters [citations omitted]."

The cases where courts have invaded the traditional secrecy of Grand Jury minutes are too numerous to set forth, nor is it necessary. Generally the person or body to whom inspection of Grand Jury minutes was allowed was an official investigating body or person directed to conduct an investigation but this too is not without exception. (See *Matter of Quinn [Guion],* 267 App Div 913, affd 293 NY 787.) When prosecutorial conduct is placed under a cloud, where charges of cover-up clearly places it, the need for invasion of Grand Jury secrecy is compelling *(Matter of Crain,* 139 Misc 799).

The Attica investigation conducted first by Robert E. Fischer and then Anthony Simonetti resulted in 42 indictments against 62 inmates containing 1,289 counts, many of which were trivial, and one indictment against one State trooper containing one count.

The faithful administration of the laws of the State in a just and evenhanded manner is clearly within the public interest. This interest cannot be served by conducting an investigation (by Judge MEYER) in a vacuum and then suppressing findings by a rigid allegiance to secrecy. If no wrongdoing was discovered, it is unfair to those who faithfully carried out their duties to remain in the penumbral region where they have been cast. If there was a disclosure of wrongdoing, an application of the rule of fundamental fairness (redaction of names and opportunity to those who may readily be identifiable to respond) is a sufficient safeguard to those who might claim harm from unfounded accusations. Attica was a tragic event which in one way or another has touched the lives of count-

less people, not the least of whom are the citizens of the State of New York. Attica-related matters have been before this court many times. There is no reason to believe we have seen the end. We should not, however, be deterred from recognizing that the public interest at stake in resolving the accusations made concerning the conduct of the investigation far outweighs any other competing interest, including the private interest of a few individuals. Likewise in the public interest is the contribution the total report may have for executive and legislative action to correct deficiencies in the ability to deal with certain matters which volumes 2 and 3 reveal.

The rather limited scope of a decision to release volumes 2 and 3 must be recognized. This would not authorize an opening up and publication of the entire body of evidence brought before the two Attica Grand Juries. Instead we would be confining ourselves to a very limited number of instances where certain Grand Jury proceedings are quoted verbatim and where other references are made to Grand Jury testimony as are contained in volumes 2 and 3 of the Meyer Report. Redaction of these matters as ordered by the court below and approved by the majority would in many instances reduce the report to an inane compilation of words and phrases and consign the entire Meyer investigation to a futile gesture.

Having read volumes 2 and 3 *in camera* and considered the various other cross appeals, I find that none rise to a level sufficient to mount a serious challenge to the public interest to be served by the release of the report.

I would modify the order appealed from and instead of redacting Grand Jury references, would require redaction of names contained in Grand Jury references of those persons about whom criticism might be inferred. The redacted volumes should then be made available to persons who, because of the uniqueness of their positions, may be readily identifiable so that they may file with the Governor's office a rebuttal statement to be made public simultaneously with the release of the disputed volumes, if they so choose.

SCHNEPP and CALLAHAN, JJ., concur with SIMONS, J. P.; DOERR, J., dissents and votes to modify the order and remit the matter, in an opinion.

Order affirmed, without costs.