In the Matter of ALAN J. GOLDBERG, Appellant, v EXTRAORDI-NARY SPECIAL GRAND JURIES OF ONONDAGA COUNTY, Respondent.

Fourth Department, July 6, 1979

4

## APPEARANCES OF COUNSEL

*Sugarman, Wallace, Manheim & Schoenwald (Maxwell B. Spoont* of counsel), for appellant.

*Peter D. Andreoli (Norman Hatt* of counsel), for respondent.

## OPINION OF THE COURT

MOULE, J.

The question on this appeal is whether the Extraordinary and Special Term of Supreme Court, Onondaga County, exceeded its authority in imposing security measures for the conduct of Extraordinary Grand Juries sitting in Syracuse, New York.

In 1976 Governor Carey empaneled three Extraordinary Grand Juries to investigate allegations of corruption in Onondaga County. On November 15, 1977 the court, sitting in an Extraordinary and Special Term, issued an order directing that all persons appearing before the Grand Juries were not to disclose testimony, evidence, decisions, the identity of witnesses, or other matters regarding Grand Jury proceedings. Because of the frequency of the Grand Jury sessions, the large number of witnesses, insufficient space in the Onondaga County Courthouse, the sensitivity of the matters under investigation and the need for security, the court issued an order dated July 21, 1978 which directed that proceedings be transferred to the New York State Armory in the City of Syracuse.

The armory is a public facility maintained by National Guard personnel. A Deputy Sheriff, posted at the main entrance, controlled admittance of those persons subpoenaed to appear before a Grand Jury or who were to meet with members of the Special Prosecutor's staff. In order to minimize the opportunity for inadvertent disclosure of a witness' identity to other witnesses or their counsel, the Special Prosecutor's staff designated several rooms where witnesses and their counsel were to wait before being taken before the Grand Jury.

Members of the Special Prosecutor's staff or Deputy Sheriffs closed the doors of these waiting rooms when witnesses and their counsel passed through the halls.

On January 4, 1979 petitioner, an attorney, appeared at the armory with his client who had been subpoenaed to appear before the Grand Jury. Petitioner walked with his client to the second floor Grand Jury room to wait for his client to be called as a witness before the Grand Jury. He was directed to wait in a room, the door to which could be closed, and he refused. The Special Assistant Attorney-General asserts that petitioner attempted to look past a screen which had been placed in front of the Grand Jury room to ascertain the identity of a particular witness who was leaving the room. Petitioner asserts that at all times he remained at a distance from the Grand Jury room so that he could not hear voices. When petitioner asked to see an order authorizing the waiting room procedures, no order was shown to him.

On January 9, 1979 petitioner again appeared at the armory with his client and again refused to comply with directions of members of the Special Prosecutor's office to wait behind closed doors. The Special Prosecutor informed the court of petitioner's actions and, on January 11, 1979 the court issued an order supplementing the November 15, 1977 order. The supplemental order provided that Deputy Sheriffs and members of the staff of the Special Prosecutor's office could require persons present in the armory to wait in designated rooms; and that Deputy Sheriffs and members of the staff of the Special Prosecutor's office could require any person to leave the armory, if, in the judgment of the members of the staff of the Special Prosecutor's office, that person interfered with Grand Jury procedures. The order further provided that a person who refused to follow directions of a Deputy Sheriff or member of the Special Prosecutor's staff would be subject to prosecution for contempt under section 215.50 of the Penal Law.

On January 16, 1979 petitioner and his client appeared at the armory a third time. Petitioner sat in a waiting room but refused to permit the door to be closed notwithstanding that the January 11, 1979 order had been served upon him. Petitioner insisted that he was not impeding the Grand Jury proceedings. Upon refusing requests to leave the building for noncompliance with the order, petitioner was taken from the building.

On January 18, 1979 petitioner was served with an order requiring him to show cause why he should not be held in contempt and petitioner made an application to vacate the order of January 11, 1979. Petitioner's application was denied and it does not appear whether there was a hearing on the contempt proceeding.

Petitioner contends that the court exceeded its statutory authorities in three ways: first, that CPL article 190 does not authorize a court to prevent the identification of witnesses absent a showing of danger to the witnesses; second, that the court could not restrict movement within the armory because it was a public courthouse; and, third, that the order of January 11, 1979 impermissibly delegates judicial authority to an executive officer.

CPL 190.25 (subd 4) provides that Grand Jury proceedings are secret and that no juror, District Attorney, clerk, or attorney representing a witness may disclose the "substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding" (emphasis added). Section 215.70 of the Penal Law imposes sanctions for unlawful Grand Jury disclosure of "grand jury testimony * * * or other matter attending a grand jury proceeding which is required by law to be kept secret." Unlike its predecessor,[*] section 215.70 does not limit matters which are prohibited from disclosure to Grand Jury evidence and statements of grand jurors but includes statements of the prosecutor to grand jurors and witnesses, and the names of witnesses who appear (see Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 215.70, p 545).

■ One of the principal reasons for maintaining the secrecy of Grand Juries is the "assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely" (People v Di Napoli, 27 NY2d 229, 235; see, also, Matter of Carey [Fischer], 68 AD2d 220). We believe that the court may take steps to protect the identity of witnesses appearing before it. Petitioner argues that there must be a showing of actual physical danger to Grand Jury witnesses before their identity can be protected. Grand Jury secrecy requirements, however, are designed to protect against the danger of subornation of perjury and tampering with

---

[*] Penal Law (1909), §§ 1783, 1783-a, 1784.

prospective witnesses as well as threats to their person. A showing of actual physical danger to a witness need not be made before the identity of that witness may be protected.

■ Petitioner contends that the January 11, 1979 order was improper in that it restricted movement within the armory. The executive orders creating the Extraordinary Grand Juries directed that they meet in the Onondaga County Courthouse. However, there was sufficient authority for the transfer of the court proceedings to the armory (Judiciary Law, § 10). The court has the inherent power to regulate its activities to preserve order and decorum, to protect the rights of parties and witnesses and to further the administration of justice *(People v Jelke,* 308 NY 56, 63). The court also has statutory power to maintain order (Judiciary Law, § 750). On two occasions prior to January 11, 1979, petitioner refused to sit in the designated waiting rooms and created disturbances. In these circumstances, we find that the court properly exercised its powers in issuing its January 11, 1979 order to preserve the integrity of the proceedings.

■ Finally, petitioner contends that the January 11, 1979 order invalidly delegated judicial authority to an executive officer. The second decretal paragraph of this order provided that: "Deputy Sheriffs and members of the staff of the Special Prosecutor's office may require any person to leave the Armory, if, in the judgment of the members of the staff of the Special Prosecutor's Office such person is interfering with the lawful functioning of the Grand Jury." Persons failing to follow such directions were "subject to arrest and/or prosecution for Criminal Contempt in the Second Degree." Inasmuch as this portion of the order places the contempt power within the office of the Special Prosecutor, it is invalid. The contempt power resides solely within the authority of the court (Judiciary Law, § 750 *et seq.;* 22 Carmody-Wait 2d, NY Prac, §§ 140:2, 140:12, 140:28, 140:39, 140:100; see, also, *Matter of Spector v Allen,* 281 NY 251; *Matter of Barnes,* 204 NY 108; *People ex rel. Platt v Rice,* 144 NY 249).

■ Petitioner is without standing to raise the questions of whether the order of January 11, 1979 deprived his client of the right to counsel or interfered with freedom of the press and we do not pass upon those questions.

Accordingly, the order dated January 11, 1979 should be modified by striking the second decretal paragraph and, as modified, should be affirmed.

SCHNEPP, CALLAHAN and WITMER, JJ., concur; DILLON, P. J., not participating.

Order unanimously modified, and, as modified, affirmed, without costs, in accordance with the opinion by MOULE, J.