JOHN H. MULROY, as County Executive and Chief Budget Officer of the County of Onondaga, Respondent, v HUGH L. CAREY, as Governor of the State of New York, et al., Appellants, and RICHARD A. HENNESSY, JR., as District Attorney of the County of Onondaga, Respondent.

Fourth Department, July 12, 1977

---

12. "The costs of failure to afford a fair trial are high. In the most extreme cases, like *Sheppard* and *Estes,* the risk of injustice was avoided when the convictions were reversed. But a reversal means that justice has been delayed for both the defendant and the State; in some cases, because of lapse of time retrial is impossible or further prosecution is gravely handicapped. Moreover, in boderline cases in which the conviction is not reversed, there is some possibility of an injustice unredressed." (*Nebraska Press Assn. v Stuart,* 427 US 539, 555.)

*Louis J. Lefkowitz, Attorney-General (Jean M. Coon, Henry De Cotis* and *Ruth Kessler Toch* of counsel), for appellants.

*Ralph I. Greenhouse (Rudolph V. Parr, Diane E. Tucker* and *Peter R. Eriksen* of counsel), for John H. Mulroy, respondent.

*Richard A. Hennessy, Jr., pro se (John Cirando, William J. Fitzpatrick* and *Bryan R. Hedges* of counsel), for respondent.

WITMER, J. The question presented on this appeal is whether the Governor of this State may direct his Attorney-General to investigate alleged unlawful acts of persons in Onondaga County with respect to solicitations, offers and payments of funds in connection with obtaining public office or contracts and suspend the District Attorney of Onondaga County with respect to the matters of such investigation, without first establishing to the satisfaction of the court the necessity of such action.

Petitioner, the County Executive and Chief Budget Officer of the County of Onondaga, instituted this article 78 proceeding to enjoin the Governor, the Attorney-General and the Special Assistant Attorney-General from proceeding to investigate such matters in Onondaga County. The apparent motivation

for the proceeding is the objection of petitioner to the imposition on the county of the expense of such investigation. Respondent District Attorney of Onondaga County by answer joins in the petition because of the implications which may flow from the fact that the Governor has seen fit to supersede him.

Conceiving the petition to be without merit as a matter of law, the respondents Governor, Attorney-General and Special Assistant Attorney-General moved for its dismissal. Special Term held that a question of fact exists for trial as to whether the Governor had reasonable grounds for invoking the services of the Attorney-General for this investigation and for superseding the Onondaga County District Attorney, and he made an order denying the motion. We think that the order must be reversed and the motion granted, on the ground that no justifiable issue exists for trial.

Section 3 of article IV of the New York State Constitution contains the powers and duties of the Governor, providing in part that, "The governor * * * shall expedite all such measures as may be resolved upon by the legislature, and *shall take care that the laws are faithfully executed"* (emphasis added). In section 63 of the Executive Law the Legislature has specified the duties of the Attorney-General, providing that "The attorney-general shall * * * 2. *Whenever required by the governor,* attend in person, or by one of his deputies, any term of the supreme court or appear before the grand jury thereof for the purpose of managing and conducting in such court or before such jury criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general or his deputy so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general or the deputy attorney-general so attending. In all such cases all expenses incurred by the attorney-general, including the salary or other compensation of all deputies employed, shall be a county charge." (Emphasis added.)

On November 24, 1976 Governor Carey issued Executive Order No. 42 to Attorney-General Lefkowitz pursuant to the above provisions of section 3 of article IV of the Constitution

and subdivision 2 of section 63 of the Executive Law, stating therein that "in view of the recommendation of the Fourth April 1976 Grand Jury and the Reports submitted by the District Attorney of New York County", he required that the Attorney-General, in person or by one or more of his deputies, attend "an Extraordinary Special and Trial Term of the Supreme Court to be appointed" by the Governor to be held in and for the County of Onondaga and appear before a grand jury which shall be drawn therein, "for the purpose of managing and conducting in said court and before said grand jury * * * examinations and inquiries * * * [as to] any and all criminal actions and proceedings * * * concerning * * * any and all unlawful acts or omissions * * * by any person * * * arising out of * * * or in any way connected with the offer, payment, acceptance or solicitation of funds or other consideration in connection with the obtaining or retaining of public employment or public office, or * * * of any contract or other benefit from a public employee * * * or the State or any of its political subidivisions; and that you [the Attorney-General] conduct, manage, prosecute and handle such other proper actions and proceedings relating thereto * * * and that in person or by your * * * deputies you, as of the date hereof, supersede * * * the District Attorney of the County of Onondaga * * * and that * * * the District Attorney of the County of Onondaga shall exercise only such powers and perform such duties as are required of him by you" (9 NYCRR 3.42).

Pursuant to Executive Order No. 42, on December 22, 1976 the Attorney-General appointed respondent Peter D. Andreoli as his Special Assistant Attorney-General to conduct such investigation. In the election of November, 1976 a new District Attorney was elected for the County of Onondaga, and he took office on January 1, 1977. Although under the authority of *Matter of Turecamo Contr. Co.* (260 App Div 253) Executive Order No. 42 was applicable to respondent Hennessy as successor District Attorney, on February 10, 1977 Governor Carey issued supplemental Executive Order No. 42.1, making the directive expressly applicable to him. The State Administrative Director duly advised the Onondaga County Treasurer of the above directions and appointment and that respondent Hennessy had been superseded as District Attorney, and advised that the expenses of the investigation would be a county charge.

Following such notification petitioner, as County Executive

and Chief Budget Officer of the county, instituted this proceeding to enjoin any action under Executive Order No. 42 and for a declaration that the order is illegal and void. Six causes of action are alleged in the petition. The first is that Executive Order No. 42 is illegal and void for failure to contain a statement of the reasons for disqualifying the District Attorney, so as to justify the order superseding him. The gist of the remaining causes of action is that the appointment of respondent Andreoli as Special Assistant Attorney-General "usurp[s] the powers of the elected County District Attorney" and damages the public trust in the office of the District Attorney; that the order is defective because it is based on unauthorized disclosure to the Governor of reports of a Grand Jury proceeding (CPL 190.25, subd 4); that the order encompasses areas outside the jurisdiction of Onondaga County, and so expenses incurred thereunder are not chargeable to the county; that the expenses of the investigation can only be charged to the county after an appropriation has been made by the State Legislature, which has not yet been done, and so the county has the right to audit and refuse to pay any charge which it finds excessive or improper; and that under section 33 of the Judiciary Law the State must bear the cost of the investigations involving State contracts, and so to the extent that the investigation involves such contracts, the county is not responsible for the expense involved.

It is apparent that much of the petition is concerned with defending the county against the prospective expenses of the investigation. To that extent it is premature. The essential issue before us, therefore, is whether Special Term was correct in requiring that a hearing be held to determine whether Executive Order No. 42 is invalid for failure of the Governor to satisfy the court that he had reasonable grounds for issuing it.

Since the people of the State, by specific provision in the Constitution (art IV, § 3), have charged the Governor with the duty to "take care that the laws are faithfully executed", and the Legislature has expressly implemented that provision by enacting subdivison 2 of section 63 of the Executive Law requiring the Attorney-General to conduct such proceedings before a supreme court and Grand Jury as the Governor shall direct concerning investigation of criminal activities, and to supersede the District Attorney in so doing, it appears prima facie that Executive Order No. 42 is valid (see *Matter of*

*Turecamo Contr. Co.,* 260 App Div 253, 258, *supra).* By the terms of the order, it appears that the Governor invoked his powers to order the investigation by reason of information that he received from the Fourth April 1976 Grand Jury and the reports submitted to him by the District Attorney of New York County. The question is whether petitioner and respondent Hennessy are entitled to require the Governor to be more specific in disclosing the information which led him to make the order.

Historically, the office of State Attorney-General pre-existed that of county District Attorneys. It existed in colonial days, was continued after the Constitution of 1777 without mention therein, and was the vehicle through which crimes throughout the State were prosecuted in those times. It was made an elective office by the Constitution of 1846. Early in the 19th century the State Legislature created the office of District Attorney and eventually provided that there shall be a District Attorney in every county of the State (see *Matter of Turecamo Contr. Co., supra; People v Kramer,* 33 Misc 209, 213-220). Although the Constitution now provides for the election of District Attorneys and for their removal by the Governor (NY Const, art XIII, § 13), the functions of the office were prescribed by the Legislature (County Law, § 700). Thus, while it has become the practice for the District Attorney in each county to prosecute the crimes committed therein, the latent power of the Attorney-General to prosecute them has continued. In subdivision 2 of section 63 of the Executive Law the Legislature merely drew upon the historical role of the Attorney-General to serve the Governor in the performance of his constitutional duty to see to it that the laws of the State are executed.

Understandably, the County of Onondaga is concerned about incurring additional expense for the investigation and prosecution of crime within its boundaries. As above noted, however, there is nothing novel in the Attorney-General participating in the performance of those duties, at county expense as provided in subdivision 2 of section 63 of the Executive Law. In his action herein, the Governor has not removed respondent District Attorney, which he may only do on charges and hearing under section 13 of article XIII of the Constitution. He has merely superseded the District Attorney with respect to this particular investigation and the crimes which may be charged as a result thereof.

Neither in the constitutional mandate to the Governor nor in the act of the Legislature implementing it (Executive Law, § 63, subd 2) has a standard been stated as a guide for action by the Governor. In sustaining the action by the Governor in *Matter of Di Brizzi (Proskauer)* (303 NY 206, 216) the court said, "Since there exists a reasonable relation between the action taken by the Governor, through the Attorney-General, and the proper discharge of the executive function, it cannot be said that subdivision 8 of section 62 of the Executive Law, as here utilized and applied, is unconstitutional."[1] Over the years various Governors have expressed self-imposed limitations on their power to supersede a District Attorney; but their authority to invoke it has rarely been challenged. In relation to a denial by Governor Dewey of a petition to supersede the Nassau County District Attorney, Charles D. Breitel, then Counsel to the Governor and now Chief Judge of the Court of Appeals, wrote in November, 1945: "The Governor's act in displacing a local official, particularly an elected one, by a State representative is not to be resorted to unless there is compelling evidence that the existing agencies are not performing or are incapable of performing their proper functions. There is no such evidence with regard to the current investigation in Nassau County. Accordingly the petition has been dismissed and the action requested has been refused." (1945 Public Papers of Governor Dewey, p 369.)

Relying on the conduct of the Governors with respect to superseding District Attorneys and on the above-quoted statement by the Court of Appeals in *Di Brizzi (supra),* it has been suggested as a standard for invocation of such power that a Governor should be required to establish to the court that he has reasonable grounds for issuing such superseding order (see Professor Pitler, "Superseding the District Attorneys in New York City—The Constitutionality and Legality of Executive Order No. 55" (41 Fordham L Rev, 517, hereinafter referred to as "Pitler".) But even Professor Pitler only recommended "some narrow standard of review" which "would not interfere too greatly with the executive power, and yet could protect the public from arbitrary and capricious executive action" (p 547). At page 532 of that article Professor Pitler wrote, "It is doubtful whether the Governor's discretion to exercise his executive power is subject to judicial review. Since it seems

---

1. At page 212 of the opinion Judge CONWAY observed that section 62 above referred to is now section 63.

clear that the power to issue superseder orders does meet the requirement of having a reasonable relation to the executive function, traditional principles of judicial review would seem to preclude a challenge to the Governor's order requiring superseder unless there is no basis for his conclusion." In Executive Order No. 42 the Governor stated the basis for his action.

In considering the imposition of a standard under which a Governor may invoke his powers to supersede a District Attorney, we should ascertain the purpose thereof—what is the evil to be avoided? It has been suggested that an unprincipled Governor could use this power to immunize his political friends and to prosecute his foes. But this fear of abuse of power is far-fetched and more academic than practical in these circumstances. The Governor is only empowered to create a term of criminal court with a Grand Jury before whom his investigating Attorney-General may present evidence for consideration of indictments, and if an indictment is returned, to prosecute the defendant in a criminal trial. The whole procedure is subject to court supervision, and the likelihood of favor to the Governor is minimal. At any rate, that was a policy risk which the framers of the Constitution and the Legislature assumed in granting this authority to the Governor.

The suggested standard for limiting the Governors is so innocuous as to be useless. A conniving Governor would have no trouble fashioning phrases within that standard to support a need for his order. Apart from that practical consideration, is the fact that we are dealing with the subject of executive power delegated to the Governor by the Constitution and the Legislature.

In *People v Kramer* (33 Misc 209, 219, *supra)* the court said, "The law thus confers upon the Governor a discretion, and when he has reason to doubt that the laws are being executed, I know of no judicial method by which his reason may be questioned or measured. It is sufficient if he, in the exercise of the discretion vested in him, directs the Attorney-General to appear and prosecute any actions, civil or criminal, in which the People are interested." In *People ex rel. Saranca Land & Timber Co. v Extraordinary Special & Trial Term of Supreme Ct.* (220 NY 487), in considering the exercise of a gubernatorial direction in a similar context, Judge CARDOZO wrote (p 491), "The relator insists that an extraordinary term is need-

less. That is a question for the governor, and no one else. We cannot review the exercise of his discretion [citations omitted]. There may be reasons for urgency which we cannot know. The governor is not required to disclose them. He may have thought that the public interest demands the expeditious determination of actions affecting the title of the state. But the whole subject is beyond our province. The power and the responsibility are his, and his only." In *Gaynor v Rockefeller* (21 AD2d 92, 98, affd 15 NY2d 120, 131) Justice STEVENS wrote in the Appellate Division, "The * * * Governor of the State 'is immune from interference by judicial process and free from judicial control in his performance of executive powers' ", and in the Court of Appeals Judge FULD wrote, "It is the settled policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes, in the absence of a clear violation of some constitutional mandate."

The expressions by various Governors of self-imposed limitations on their exercise of the power to supersede a District Attorney, typified in the letter by Counsel Breitel, quoted above, must be considered in the context in which made. Such expressions did not reflect any statutory compulsion nor an abdication by the Governors to the courts, thereby permitting the courts to impose a burden of proof upon them to establish to the satisfaction of the courts that they have adhered to an appropriate executive standard. As stated by Judge CARDOZO in *Saranac Land & Timber Co. (supra),* there may be reasons why the Governor should not reveal the information which has come to him and has prompted his executive action.

No instance has been cited to this court in which over the history of the existence of this power a Governor has abused his authority in superseding a District Attorney. If such abuse is found to occur, the People and the Legislature are the ones to fashion a means of restricting the Governors' use of such power. On this record, the court should not attempt to do so.

Since the argument of this appeal, respondent Hennessy submitted to the court a letter supplementing his brief. He argues that effective on June 1, 1974 the Legislature enacted article 16-A of the Election Law, transferring to the State Board of Elections the former authority of the Attorney-General to investigate election frauds; and he cites our decision in *Matter of New York State Bd. of Elections* (49 AD2d 806). That enactment was not designed to, and of course did not, release the Governor from the duty imposed upon him by

section 3 of article IV of the State Constitution. Moreover, the Legislature did not repeal, expressly or by implication, subdivision 2 of section 63 of the Executive Law; and there is no reason for us to conclude that the Legislature meant to limit the application of section 63. The Governor's authority is all embracing, and his Order No. 42 may well contemplate broader action than is envisaged under article 16-A of the Election Law.

We conclude, therefore, that the Governor's Executive Orders No. 42 and 42.1 are legal and valid and not subject to attack by the petition herein. Insofar as the petition seeks to limit the bills which may be presented to Onondaga County by respondents Lefkowitz and Andreoli in connection with the investigation, we deem the application premature. The county's concern for the burden of the expense of the investigation, especially if it encompasses areas beyond the boundaries of Onondaga County, may, of course, be addressed to the Legislature (see Attica investigation) or, possibly, on appropriate showing, to the court. The county may also find some relief under *People ex rel. Rand v Craig* (231 NY 216).

The order should, therefore, be reversed, the motion granted and the petition dismissed, without prejudice to such later proceedings as the parties may deem appropriate with respect to the expenses of the investigation as they are submitted to the county for payment.

CARDAMONE, J. P., SIMONS and DENMAN, JJ., concur.

Order unanimously reversed, without costs, and petition dismissed in accordance with opinion by WITMER, J.