OPINION OF THE COURT
Chief Judge Kaye.
By this appeal we are asked to determine whether Governor George E. Pataki had the legal authority to supersede Bronx County District Attorney Robert T. Johnson in a potential death penalty prosecution involving a slain police officer. We hold that the Governor acted lawfully under constitutional and statutory authority, and that even if the rationale for his action were subject to judicial review the superseder order here would be valid.
*221 On March 21, 1996, pursuant to article IV, § 3 of the New York Constitution and Executive Law § 63 (2), Governor Pataki issued Executive Order No. 27 (9 NYCRR 5.27), which required respondent Attorney-General Dennis C. Vacco to replace District Attorney Johnson in all investigations and proceedings arising out of the shooting of Police Officer Kevin Gillespie. As recited in the Executive Order, the District Attorney’s statements, correspondence and swift rejection of the death penalty option in prior death-eligible cases indicated that the District Attorney had adopted a "blanket policy” against imposition of the death penalty.
Such a policy, according to the Executive Order, both violated a District Attorney’s statutory duty to make death penalty determinations on a case-by-case basis and opened future death sentences to challenge on proportionality grounds. Given his obligation to take care that the death penalty law would be faithfully executed and the possibility that the District Attorney would take action that would irrevocably foreclose the death penalty in the Gillespie matter, the Executive Order continued, the Governor concluded that his immediate intervention through a superseder order was necessary.
Subsequently, the Grand Jury indicted Angel Diaz on two counts of murder in the first degree and related offenses in connection with Officer Gillespie’s death. Diaz’s alleged accomplices, Jesus Mendez and Ricardo Morales, were indicted for second-degree murder and other lesser crimes. The Attorney-General then filed notice that the People intended to seek the death penalty against Diaz.
Before the Attorney-General’s announcement appellants District Attorney Johnson, and Bronx County voters and taxpayers (whose standing is assumed for purposes of this appeal), separately commenced CPLR article 78 proceedings contesting the legality of Executive Order No. 27. Supreme Court dismissed both petitions, holding that the superseder was an executive action pursuant to a valid grant of authority and as such was nonjusticiable. Alternatively, the court found that the District Attorney’s pronouncements and practices provided "ample basis” for the Governor’s action. During pendency of the appeals, Diaz committed suicide in his jail cell. Mendez and Morales were later tried in Federal court for their involvement in the Gillespie murder. They were found guilty of violating the Racketeer Influenced and Corrupt Organizations statute (18 USC § 1962), and their State indictments were dismissed.
*222 The Appellate Division, concluding the appeals were not moot, unanimously affirmed Supreme Court’s dismissal of both petitions (229 AD2d 242). Finding that this case fell considerably short of the possible justiciable controversies reserved in Mulroy v Carey (43 NY2d 819, 821), the court applied the traditional test for determining the validity of a superseder order — whether the Governor had acted within constitutional or statutory authority — and concluded that appellants had not made this requisite showing. Like the trial court, the Appellate Division went on to consider the reasonableness of the order, holding that the Governor’s intervention was "fully justified” in light of the possibility that the District Attorney would take steps to preclude the death penalty in the Gillespie matter (229 AD2d at 246). We now affirm.
Mootness
We first reject the Attorney-General’s contention that this appeal has been mooted by the death of Diaz, the conviction of Mendez and Morales on Federal charges, and the dismissal of the State indictments against these two defendants. An appeal presents a live controversy where the rights of the parties will be directly affected by the determination and where the judgment has "immediate consequence” for them (Matter of Hearst Corp. v Clyne, 50 NY2d 707, 714). Here, a live controversy remains in at least two respects. First, Executive Order No. 27 mandates that Bronx County pay all charges incurred by the Attorney-General in prosecuting the Gillespie matter. Since the validity of the charges depends on the validity of the order — the issue before us — the appeal continues to have immediate consequence for the parties. Second, the Executive Order is not by its terms limited to the prosecution of Diaz, Mendez and Morales. To the extent that the District Attorney — who himself argues against mootness — may find it necessary to initiate additional proceedings or inquiries if the Executive Order is invalidated, the outcome of this appeal also has immediate consequence for the parties.[1]
*223 The Law Regarding Superseder
Passing from mootness to the merits, we begin analysis with a recognition that when the Governor acts by Executive Order pursuant to a valid grant of discretionary authority, his actions are largely beyond judicial review (see, e.g., Matter of Cunningham v Nadjari, 39 NY2d 314, 317-318; Gaynor v Rockefeller, 15 NY2d 120, 131; Matter of Nistal v Hausauer, 308 NY 146, 152-153, cert denied 349 US 962).
Judicial review in such cases is generally limited to determining whether the State Constitution or the Legislature has empowered the Governor to act, and does not include the manner in which the Governor chooses to discharge that authority (see, e.g., Mulroy v Carey, 58 AD2d 207, 214-215, affd 43 NY2d 819; People ex rel. Saranac Land & Timber Co. v Extraordinary Special & Trial Term of Supreme Ct., 220 NY 487, 491; People v Kramer, 33 Misc 209, 219). For abuse of lawful discretionary authority, the remedy as a rule lies with the people at the polls, or with a constitutional amendment, or with corrective legislation.
Whether a Governor is empowered to supersede a District Attorney in a particular prosecution is not a novel question. We have long held that article IV, § 3 of the Constitution and Executive Law § 63 (2) together provide the Governor with discretionary authority to supersede the District Attorney in a matter (see, Mulroy v Carey, 43 NY2d at 821, supra; see also, Matter of Additional Jan. 1979 Grand Jury of Albany Supreme Ct. v Doe, 50 NY2d 14, 16).[2] Article IV, § 3 delegates to the Governor, as head of the executive branch, the duty to "take care that the laws are faithfully executed.” Executive Law § 63 (2), the legislative grant of authority, provides:
"The attorney-general shall * * * [w]henever required by the governor, * * * manag[e] and conduc[t] * * * criminal actions or proceedings as shall be specified in such requirement; in which case the attorney-general * * * shall exercise all the powers and perform all the duties in respect of *224 such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform; and in any of such actions or proceedings the district attorney shall only exercise such powers and perform such duties as are required of him by the attorney-general”.
The statute neither limits the Governor’s authority to supersede nor requires the Governor to explain that choice. Consistent with that authority, Governors have numerous times invoked the superseder power (see, e.g., Pitler, Superseding the District Attorneys in New York City — The Constitutionality and Legality of Executive Order No. 55, 41 Fordham L Rev 517, 522-527 [1973]).
In Mulroy v Carey (43 NY2d at 821, supra), this Court reserved the possibility that in some undefined circumstance, the courts could invalidate this executive action. There we upheld the Governor’s superseder of the Onondaga County District Attorney, rejecting the argument that the Governor was required to establish "to the satisfaction of the court the necessity of such action” in that case (58 AD2d at 208, supra). We added, however, that
"no view is expressed whether in any or all circumstances the exercise of the executive power to supersede an elected District Attorney would be beyond judicial review or correction in a direct or collateral action or proceeding brought or defended by the county or the elected District Attorney involved” (43 NY2d at 821, supra).
Application of the Law to Appellants’ Additional Arguments
Executive Order No. 27 is on its face valid, reflecting the authority granted the Governor by article IV, § 3 of the New York Constitution together with Executive Law § 63 (2). Appellants challenge its legality on several additional grounds.
The major thrust of appellants’ argument — asserted from the vantage point of both the District Attorney and Bronx voters — is that the District Attorney, a constitutional officer accountable to the local electorate, is insulated from nonconsensual superseder by a "zone of independence” based on a delegation to him of exclusive authority to prosecute crimes in Bronx County (see, NY Const, art XIII, § 13; County Law § 700 [1]). Belatedly, appellants argue that the power of superseder is limited to subordinates in the executive branch (which do *225 not include the District Attorney) or to instances where the District Attorney is disabled from acting, as by reason of local conflict of interest.
The Constitution provides for the offices of Governor, Attorney-General and District Attorneys, but it does not identify particular — let alone exclusive — prosecutorial duties or allocate the responsibility among them. Rather, the delineation of law enforcement functions has consistently been left to the Legislature (see, e.g., Matter of Schumer v Holtzman, 60 NY2d 46, 53).
While prosecutorial authority over the decades has in fact passed from the Attorney-General to the District Attorneys, the Legislature has recognized for more than 150 years the authority of the Attorney-General to prosecute crimes, even at the local level, when properly directed to do so by the Governor (see, Executive Law § 63; CPL 1.20 [32]; Matter of Dondi v Jones, 40 NY2d at 19, supra; Pitler, 41 Fordham L Rev at 518-522, op cit). Nor has such authority been restricted to instances where a local conflict of interest disabled a District Attorney, an officer within the executive branch (see, People v Leahy, 72 NY2d 510, 513), from prosecuting a matter. No such limitation appears in the Constitution or statutes, and none has been found in prior case law dealing with these very issues (see, Mulroy v Carey, 58 AD2d at 208-209, 214-215, supra; Matter of Turecamo Contr. Co., 260 App Div 253, 256-258; People v Malek, 99 Misc 2d 439, 442-443; Berger v Carey, 86 Misc 2d 727, 728).
Similarly, we are unpersuaded by the contention that Executive Law § 63-d, passed in connection with the recent death penalty legislation (L 1995, ch 1), implicitly repealed the portion of Executive Law § 63 (2) pertaining to first-degree murder prosecutions. Section 63-d permits the Governor to direct the Attorney-General, when requested by the District Attorney, to assist in a potential death penalty case (see, Governor’s Mem approving L 1995, ch 1, 1995 McKinney’s Session Laws of NY, at 2283, 2288; Mem of Assembly Codes Comm, 1995 NY Legis Ann, at 1, 14-15). Nothing in or about that section evinces a legislative intention to limit a Governor’s supersession authority. In short, these statutes simply provide two different, but complementary, avenues by which the Attorney-General can exercise the limited prosecutorial authority of that State office. There is no repugnancy indicating implicit repealer.
Appellants next improperly analogize Executive Order No. 27 to the invalidated order in Rapp v Carey (44 NY2d 157). *226 The challenged order in Rapp — issued pursuant to article IV, § 3 of the State Constitution and section 74 of the Public Officers Law — required a wide range of State employees to file extensive personal financial statements and to abstain from various activities. This Court held that while the Governor has "the power to enforce legislation and is accorded great flexibility in determining the methods of enforcement” by the "take care” clause of the State Constitution, the Governor’s rule-making Executive Order actually conflicted with the Legislature’s intent and negated the statute it purported to administer (44 NY2d at 163). Consequently, we concluded that the order represented an unconstitutional encroachment on the powers of the legislative branch (44 NY2d at 163-167, supra). By contrast, Executive Order No. 27 does not promulgate any rules requiring District Attorneys to seek the death penalty and directs only supersession, as contemplated by Executive Law § 63 (2). Clearly then, the separation of powers concerns motivating Rapp are absent here.
Finally, we reach appellants’ argument that the Governor abused his authority in choosing to supersede the District Attorney merely because he disagreed with the District Attorney’s discretionary decision about sentencing. Although a Governor is not obliged to state reasons for superseder, Executive Order No. 27 does in fact detail Governor Pataki’s reasons for superseding the District Attorney in this instance, and they go beyond disagreement with a discretionary decision in a particular matter. We need not define whether a standard of review, if one is applicable at all, should be reasonableness, necessity or some other standard. In any event, we agree with the trial court and Appellate Division that the challenged Executive Order expresses the Governor’s executive judgment that there was a threat to faithful execution of the death penalty law that supported this particular superseder.
Response to the Dissents
A. The Titone Dissent. The Court unanimously agrees that a Governor can lawfully supersede a District Attorney in a particular matter. We part company over whether the Governor lawfully superseded the District Attorney in the Gillespie matter. The Titone dissent concludes that supersession here violated statutory law by substituting the Governor’s policy choice for the legislative delegation of unfettered discretion to the District Attorney.
Whether or not District Attorneys must exercise their death penalty discretion on a case-by-case basis, clearly the Legisla *227 ture did not allow one or all 62 District Attorneys to functionally veto the statute by adopting a "blanket policy,” thereby in effect refusing to exercise discretion. Nor did supersession substitute the Governor’s policy choice for the death penalty in the Gillespie matter. As permitted by Executive Law § 63 (2), the Governor designated the Attorney-General in place of the District Attorney in prosecuting the entire matter, including the exercise of discretion regarding sentence.[3]
Indeed, this dissent avoids all reference to Executive Law § 63 (2). In enacting the death penalty statute, the Legislature— mindful of the special responsibilities of litigating such cases— authorized the assistance of the Attorney-General at the request of a District Attorney (see, Executive Law § 63-d).[4] Yet significantly, in the very same section of the Executive Law the Legislature also left unchanged the long-standing authority vested in the Governor to supersede a District Attorney in a particular matter (see, Executive Law § 63 [2]; Mulroy v Carey, 43 NY2d 819, supra).
B. The Smith Dissent. This dissent concludes that the superseder lacked even a rational basis. The premise of the dissent is that the superseder was irrational because it reformulated, and indeed nullified, the Legislature’s grant of discretionary authority to the District Attorney to choose whether to seek the death penalty or a life sentence in first-degree murder cases (Smith dissenting opn, at 241). What is not clear is whether the dissent derives that premise from the first-degree murder statute, or from this District Attorney’s pronouncements and practices. It is in either event flawed.
We turn first to the first-degree murder statute. Plainly the grant of discretionary authority to District Attorneys does not in all cases foreclose superseder. The dissent points to Execu *228 tive Law § 63-d. — providing for assistance by the Attorney-General at the request of the District Attorney — as the Legislature’s sole authorization for the Attorney-General’s involvement (Smith dissenting opn, at 241, n 5). That argument ignores Executive Law § 63 (2) — which we all agree has long provided a statutory basis for superseder even in the absence of a request by the District Attorney. The stated objective of superseder in the Gillespie matter was not to override the statutory grant of discretionary authority regarding sentencing. Rather, the stated purpose of the Executive Order was to assure that discretion would be exercised, in circumstances where the District Attorney’s "blanket policy” might raise doubt that it would be, where he might have foreclosed an exercise of discretion, and where such a measure might have affected proportionality. We cannot agree with the dissent that the superseder in such circumstances lacked a rational basis.
For much the same reason the dissent’s alternative premise — that, based on the conduct of the District Attorney, superseder in this matter was invalid — is also flawed. As recited in the Executive Order, superseder proceeded from the executive judgment that a "blanket policy” — never unequivocally disavowed — existed that precluded the exercise of discretion by the District Attorney. Thus, the record fails to support the dissent’s, assertion that the Governor acted irrationally in deciding to supersede.
Appellants’ remaining arguments lack merit.
Accordingly, the order of the Appellate Division should be affirmed, without costs.

. We have no cause to doubt the District Attorney’s own argument that the case is not moot because of several additional steps he could take if the superseder were found invalid, and therefore cannot agree with the dissent that such an argument is "speculative” (Smith dissenting opn, at 236). That the spectre of expenses chargeable to Bronx County by the Attorney-General is not "independently significant” (id.) similarly does not determine mootness. Those costs remain a live issue. Given this record, we need not and do *223 not reach the exception to the mootness doctrine, which the Appellate Division found applicable even if the case were moot.

. This Court has rejected appellants’ argument that Executive Law § 63 (2) should be read narrowly, as merely defining the general duties of the Attorney-General (see, e.g., Matter of Haggerty v Himelein, 89 NY2d 431, 436; Mulroy v Carey, 43 NY2d at 821, supra; Matter of Dondi v Jones, 40 NY2d 8, 19; People v Rallo, 39 NY2d 217, 224).

. While the dissent speaks of discretion of the District Attorney, in point of fact the Criminal Procedure Law vests ultimate discretion to seek the death penalty in "the people,” a class of representatives that includes the Attorney-General (CPL 250.40, 400.27; see also, CPL 1.20 [31], [32]).

. As the Memorandum of the Assembly Codes Committee points out, "District attorneys who must prosecute death penalty cases face unique challenges and must allocate additional resources in a capital case. In recognition of these burdens, [the death penalty] legislation provides a range of assistance programs for prosecutors litigating first degree murder cases” (1995 NY Legis Ann, at 1, 14). In addition to section 63-d, the Legislature enacted Executive Law § 837-a (7), which provides prosecutors with "continuing legal education, training, advice and assistance” in death penalty cases, and Executive Law § 837-l, which provides monies to District Attorneys financially burdened by capital prosecutions.