# Supreme Court of Florida

_____

No. SC17-653
_____

**ARAMIS DONELL AYALA, etc.,**
Petitioner,

vs.

**RICK SCOTT, GOVERNOR,**
Respondent.

[August 31, 2017]

LAWSON, J.

Aramis Donell Ayala, State Attorney for Florida's Ninth Judicial Circuit, petitions this Court for a writ of quo warranto, challenging Governor Rick Scott's authority under section 27.14(1), Florida Statutes (2016), to reassign the prosecution of death-penalty eligible cases in the Ninth Circuit to Brad King, State Attorney for Florida's Fifth Judicial Circuit. We have jurisdiction. See article V, § 3(b)(8), Fla. Const. For the reasons below, we deny Ayala's petition.

## BACKGROUND

At a March 15, 2017, press conference, Ayala announced that she "will not be seeking [the] death penalty in the cases handled in [her] office." Several times during the same press conference, Ayala reiterated her intent to implement a blanket "policy" of not seeking the death penalty in any eligible case because, in her view, pursuing death sentences "is not in the best interest of th[e] community or in the best interest of justice," even where an individual case "absolutely deserve[s] [the] death penalty."

In response to Ayala's announcement, Governor Rick Scott issued a series of executive orders reassigning the prosecution of death-penalty eligible cases pending in the Ninth Circuit to King. In support of these orders, the Governor cited his duty as Florida's chief executive officer under article IV, section 1(a), of the Florida Constitution to "take care that the laws be faithfully executed" and his authority under section 27.14(1), Florida Statutes, to assign state attorneys to other circuits "if, for any . . . good and sufficient reason, the Governor determines that the ends of justice would be best served." The reassignment orders do not direct King to pursue the death penalty in any particular case, and in a statement filed in this Court, King has sworn that the Governor made no attempt to influence his decision as to whether the circumstances of any of the reassigned cases warrant pursuing the death penalty.

After unsuccessfully seeking a stay of the reassignment orders in the Ninth Circuit, Ayala filed this petition for a writ of quo warranto challenging the Governor's authority to reassign the cases at issue to King. The record reflects that Ayala and her office have abided by the lower courts' denial of her motion and fully cooperated with King.

## ANALYSIS

Ayala argues that the Governor exceeded his authority under section 27.14 by reassigning death-penalty eligible cases in the Ninth Circuit to King over her objection because article V, section 17, of the Florida Constitution makes Ayala "the prosecuting officer of all trial courts in [the Ninth] [C]ircuit." While quo warranto is the proper vehicle to challenge the Governor's authority to reassign these cases to King, see Fla. House of Representatives v. Crist, 999 So. 2d 601, 607 (Fla. 2008), Ayala is not entitled to relief because the Governor did not exceed his authority on the facts of this case.

As Florida's chief executive officer, the Governor is vested with the "supreme executive power" and is charged with the duty to "take care that the laws be faithfully executed." Art. IV, §1(a), Fla. Const. Florida law facilitates the Governor's discharge of this duty, among other ways, through state attorney assignments. Specifically, section 27.14(1), the constitutionality of which Ayala concedes, provides:

If any state attorney is disqualified to represent the state in any investigation, case, or matter pending in the courts of his or her circuit or <u>if, for any other good and sufficient reason, the Governor determines that the ends of justice would be best served, the Governor may, by executive order filed with the Department of State,</u> either order an exchange of circuits or of courts between such state attorney and any other state attorney or <u>order an assignment of any state attorney to discharge the duties of the state attorney with respect to one or more specified investigations, cases, or matters, specified in general in the executive order of the Governor</u>. Any exchange or assignment of any state attorney to a particular circuit shall expire 12 months after the date of issuance, unless an extension is approved by order of the Supreme Court upon application of the Governor showing good and sufficient cause to extend such exchange or assignment.

§ 27.14(1), Fla. Stat. (2016) (emphasis added).

This Court has previously recognized that the Governor has broad authority to assign state attorneys to other circuits pursuant to section 27.14:

It is the duty of the Governor under Fla. Const. F.S.A., art. IV, § 1(a) in the exercise of his executive power to "take care that the laws be faithfully executed." The exercise of this power and the performance of this duty are clearly essential to the orderly conduct of government and the execution of the laws of this State. An executive order assigning a state attorney is exclusively within the orbit of authority of the Chief Executive when exercised within the bounds of the statute. See <u>Kirk v. Baker</u>, 224 So. 2d 311 (Fla. 1969). The Governor is given broad authority to fulfill his duty in taking "care that the laws be faithfully executed," and he should be required to do no more than make a general recitation as to his reasons for assigning a state attorney to another circuit.

<u>Finch v. Fitzpatrick</u>, 254 So. 2d 203, 204-05 (Fla. 1971); <u>see also</u> <u>Austin v. State ex rel. Christian</u>, 310 So. 2d 289, 293 (Fla. 1975) ("The statutes authorizing assignments of state attorneys should be broadly and liberally construed so as to

complement and implement the duty of the Governor under the Constitution of the State of Florida to 'take care that the laws be faithfully executed.' " (quoting art. IV, § 1(a), Fla. Const.)).

Accordingly, this Court reviews challenges to the Governor's exercise of his "broad discretion in determining 'good and sufficient reason' for assigning a state attorney to another circuit," Finch, 254 So. 2d at 205, similar to the way in which it reviews exercises of discretion by the lower courts. Compare Johns v. State, 197 So. 791, 796 (Fla. 1940) ("If the Governor should abuse [the assignment] power, by arbitrarily and without any reason whatsoever [for] making such an assignment, it might be that his action could be inquired into by writ of quo warranto . . . ."); with McFadden v. State, 177 So. 3d 562, 567 (Fla. 2015) ("Discretion is abused only when the trial court's decision is 'arbitrary, fanciful, or unreasonable.' " (quoting Gonzalez v. State, 990 So. 2d 1017, 1033 (Fla. 2008))).

Applying this well-established standard of review to the facts of this case, the executive orders reassigning the death-penalty eligible cases in the Ninth Circuit to King fall well "within the bounds" of the Governor's "broad authority." Finch, 254 So. 2d at 204-05. Far from being unreasoned or arbitrary, as required by section 27.14(1), the reassignments are predicated upon "good and sufficient reason," namely Ayala's blanket refusal to pursue the death penalty in any case

despite Florida law establishing the death penalty as an appropriate sentence under certain circumstances.  See generally § 921.141, Fla. Stat. (2017).

Notwithstanding the Governor's compliance with all of the requirements of section 27.14(1), however, Ayala and her amici urge this Court to invalidate the reassignment orders by viewing this case as a power struggle over prosecutorial discretion.  We decline the invitation because by effectively banning the death penalty in the Ninth Circuit—as opposed to making case-specific determinations as to whether the facts of each death-penalty eligible case justify seeking the death penalty—Ayala has exercised no discretion at all.  As New York's high court cogently explained, "adopting a 'blanket policy' " against the imposition of the death penalty is "in effect refusing to exercise discretion" and tantamount to a "functional[] veto" of state law authorizing prosecutors to pursue the death penalty in appropriate cases.  Johnson v. Pataki, 691 N.E.2d 1002, 1007 (N.Y. 1997).

Although Johnson applied New York law, the standards to which this Court holds its own judicial officers establish that Ayala's actions have the same impact under Florida law.  For example, our trial judges may not "refuse to exercise discretion" or "rely on an inflexible rule for a decision that the law places in the judge's discretion."  Barrow v. State, 27 So. 3d 211, 218 (Fla. 4th DCA 2010), approved, 91 So. 3d 826 (Fla. 2012).  Instead, exercising discretion demands an individualized determination "exercised according to the exigency of the case,

upon a consideration of the attending circumstances." Barber v. State, 5 Fla. 199, 206 (Fla. 1853) (Thompson, J., concurring).

Thus, under Florida law, Ayala's blanket refusal to seek the death penalty in any eligible case, including a case that "absolutely deserve[s] [the] death penalty" does not reflect an exercise of prosecutorial discretion; it embodies, at best, a misunderstanding of Florida law. Cf. Doe v. State, 499 So. 2d 13, 14 (Fla. 3d DCA 1986) (holding "the trial court failed to exercise its independent sentencing discretion" in light of its erroneous view of the law); see also Taylor v. State, 38 So. 380, 383 (Fla. 1905) (recognizing that "a failure of the state's interests" occurs where "the regular state attorney is unwilling or refuses to act").[1]

Moreover, while Ayala's blanket prohibition against the death penalty provided the Governor with "good and sufficient reason" to reassign the cases at issue to King, also important to our holding is that the Governor did not attempt to decide which cases are deserving of the death penalty. The Governor's orders do

---

1. Similarly untenable is Ayala's position that she has the authority to pick and choose (by consenting to reassignment in some cases but objecting in others) when she is the prosecuting officer for the Ninth Circuit. While the Ninth Circuit voters elected Ayala as their state attorney, she holds that position subject to Florida law, including section 27.14, by which the Governor effectuates his constitutional duty to ensure the faithful execution of the law through time-limited state attorney assignments. See Finch, 254 So. 2d at 205 ("The purpose of the time limitation in the [assignment] statute is to prevent the Chief Executive from frustrating the will of the voters of a judicial circuit by replacing an elected state attorney with one chosen by the Governor from another circuit.").

not direct King to seek the death penalty in any of the reassigned cases, and King has sworn that the Governor has not attempted to interfere with his determination as to whether to pursue the death penalty in any case. Rather, consistent with the Governor's constitutional duty, effectuated pursuant to his statutory assignment authority, the executive orders ensure the faithful execution of Florida law by guaranteeing that the death penalty—while never mandatory—remains an option in the death-penalty eligible cases in the Ninth Circuit, but leaving it up to King, as the assigned state attorney, to determine whether to seek the death penalty on a case-by-case basis.

On these facts, the Governor has not abused his broad discretion in reassigning the cases at issue to King.[2]

---

2. Because the power to prosecute, including whether to seek the death penalty, is a purely executive function, see State v. Bloom, 497 So. 2d 2, 3 (Fla. 1986), we also reject Ayala's argument that the executive orders violate the separation of powers doctrine of article II, section 3, of the Florida Constitution by impermissibly encroaching upon the judiciary. See Fulk v. State, 417 So. 2d 1121, 1126 (Fla. 5th DCA 1982) ("Although state attorneys, like all attorneys, are officers of the court, the execution of criminal statutes by enforcement, including prosecution, is an executive function of government. The state attorney, when acting as a prosecuting officer under Article V, section 17, of the Florida Constitution and under chapter 27 of the Florida Statutes, is performing an executive function and not a judicial function.") (Cowart, J., concurring specially) (footnote omitted).

**CONCLUSION**

The executive orders reassigning death-penalty eligible cases in the Ninth Circuit to King do not exceed the Governor's authority on the facts of this case. Therefore, we deny Ayala's petition.

It is so ordered.

LABARGA, C.J., and CANADY, and POLSTON, JJ., concur.
LEWIS, J., concurs in result.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

PARIENTE, J., dissenting.

This case is about the independence of duly elected State Attorneys to make lawful decisions within their respective jurisdictions as to sentencing and allocation of their offices' resources, free from interference by a Governor who disagrees with their decisions. The issue before this Court is whether a duly elected State Attorney's choice to forgo seeking one potential penalty in a class of criminal cases, in favor of seeking another penalty authorized by statute, constitutes "good and sufficient reason" for the Governor to exercise his removal power under section 27.14(1), Florida Statutes (2017). I dissent because the State Attorney's decision to prosecute first-degree murder cases but not seek the death penalty at this time does not provide a basis for the Governor to remove State Attorney Aramis Ayala.

- 9 -

Article V, section 17, of the Florida Constitution, which was adopted in 1972, provides for an elected state attorney "[i]n each judicial circuit," who "shall be the prosecuting officer of all trial courts in that circuit and shall perform other duties prescribed by general law." Art. V, § 17, Fla. Const. As to the role of elected State Attorneys, this Court made clear in Austin v. State ex rel. Christian, 310 So. 2d 289 (Fla. 1975), that "the office of State Attorney is a constitutional office," stating:

> State Attorneys are <u>constitutional officers</u>, charged with the responsibility of prosecutions in the circuit in which he [or she] is elected and with the performance of such other duties as are prescribed by general law. . . . Being an elected official he [or she] is responsible to the electorate of [the] circuit, this being the traditional method in a democracy by which the citizenry may be assured that vast power will not be abused. . . . The Legislature, in its wisdom, has empowered the Governor to exchange and assign State Attorneys between judicial circuits within the confines of its enactments.

<u>Id.</u> at 293-94 (emphasis added). The Court also established that "[a] statute enacted by the Legislature may not constrict a right granted under the ultimate authority of the Constitution." <u>Id.</u> at 293.

Specifically at issue in this case is the decision of Aramis Ayala, the duly elected State Attorney for the Ninth Judicial Circuit, to exercise her prosecutorial discretion not to seek the death penalty in cases in which she sought and obtained indictments for first-degree murder. It is well established in our case law that "the decision to seek the death penalty," as allowed by statute, "is within the

- 10 -

prosecutor's discretion."  <u>Freeman v. State</u>, 858 So. 2d 319, 322 (Fla. 2003).

Nowhere in the Florida Statutes does the Legislature mandate that a prosecutor

seek the death penalty in capital prosecutions.  <u>See</u> § 921.141(1), Fla. Stat. (2017);

§ 775.082(1)(a), Fla. Stat. (2017).  Florida's capital sentencing scheme affords a

duly elected State Attorney the discretion to pursue either of two possible

sentences "[u]pon conviction or adjudication of guilt . . . of a capital felony":

"death or life imprisonment" without the possibility of parole.  § 921.141(1).

Section 775.082 states that "a person who has been convicted of a capital felony

shall be punished by death if the proceeding held to determine sentence according

to the procedure set forth in [section] 921.141 results in a determination that such

person shall be punished by death, otherwise such person shall be punished by life

imprisonment" and shall be ineligible for parole.  § 775.082(1)(a).  Either way,

upon a conviction of first-degree murder, Florida law requires a minimum sentence

of life imprisonment without parole.

Likewise, Florida's most recently amended capital sentencing scheme

further affirms that it is the prosecutor's decision whether to seek death in each

capital prosecution, stating: "If the prosecutor intends to seek the death penalty, the

prosecutor must give notice to the defendant and file the notice with the court

within 45 days after arraignment. . . .  The court may allow the prosecutor to

amend the notice upon a showing of good cause."  Ch. 2017-1, Laws of Fla., § 4.

Although the amicus brief of the House of Representatives asserts that the State Attorney is obligated to seek the death penalty in each prosecution where the State can prove at least one aggravating factor, the Governor disagrees with that position, acknowledging that the decision to seek death is a matter of prosecutorial discretion.

In his executive order removing State Attorney Ayala, Governor Scott referenced article IV, section 1(a), of the Florida Constitution, and section 27.14, Florida Statutes (2017).  See, e.g., Exec. Order No. 17-66 (Fla. Mar. 16, 2017). Article IV, section 1(a), of the Florida Constitution, states in pertinent part: "The governor shall take care that the laws be faithfully executed, commission all officers of the state and counties, and transact all necessary business with the officers of government."  Art. IV, § 1(a), Fla. Const. (emphasis added).  However, as Amici Curiae Former Judges argue,[3] the fact that the Governor is charged to faithfully execute the laws does not supplant the constitutional authority of the independently elected State Attorney to prosecute crimes and to exercise his or her discretion in deciding what punishment to seek within the confines of the applicable laws.  See Amici Curiae Former Judges Br. at 13 (The Governor's

_____

3. Amici Curiae Former Judges, along with Current and Former Prosecutors, and Legal Community Leaders, filed a Brief in support of Ayala's petition.  For ease of reference, they are referred to cumulatively here as "Amici Curiae Former Judges."

constitutional duty to " 'take care that the laws be faithfully executed' . . . cannot empower the governor, contrary to the Florida Constitution's express provision that state attorneys 'shall' be 'the' prosecutor within their circuits, to usurp prosecutorial duties." (quoting art. IV, § 1(a), Fla. Const.)). Indeed, every day State Attorneys are tasked with making tough choices as to which crimes to prosecute and which penalties to pursue in consideration of their offices' limited resources. Such decisions include whether to accept a plea to a lesser degree of the charged offense, whether to prosecute certain classes of crimes, and, of course, whether to seek the death penalty in capital prosecutions.

The Governor's only constitutional authority to remove State Attorneys comes from article IV, section 7, of the Florida Constitution. That provision provides that "the governor may suspend from office any state officer not subject to impeachment . . . for malfeasance, misfeasance, neglect of duty, drunkenness, incompetence, permanent inability to perform official duties, or commission of a felony." Governor Scott has not claimed that any of these grounds for exercising his constitutional removal authority applies in this case. Therefore, because Governor Scott does not have the constitutional authority to remove Ayala from her position under article IV, section 7, the Governor relies on section 27.14,

Florida Statutes.[4]

When State Attorney Ayala announced that her office would not seek the death penalty in capital prosecutions, she acted well within the bounds of Florida law regarding the death penalty. She did not announce a refusal to prosecute the guilt of defendants charged with first-degree murder. Rather, State Attorney Ayala announced that she would not seek a sentence that produces years of appeals and endless constitutional challenges and implicates decades of significant jurisprudential developments, many of which have emanated over the years from the United States Supreme Court.[5] Despite assertions to the contrary, State

---

4. Section 27.14 traces its origin back to chapter 5399, Laws of Florida, § 2 (1905), in which the Legislature authorized the Governor to exchange or reassign a State Attorney in the event of the disqualification of a State Attorney, "or if for any reason the Governor of the State thinks that the ends of justice would be best subserved." In 1969, the Legislature amended the law to require this Court's approval for exchanges or assignments lasting longer than sixty days, and inserted the phrase "good and sufficient" to qualify the reason for acting. Ch. 69-1736, Laws of Fla.

5. In fiscal year 2015-2016, Florida courts sent 498 people to prison for homicide offenses ranging from manslaughter to first-degree murder, but only seven to death row. Fla. Dep't of Corrections, Annual Report 2015-2016, at 37, 49, http://www.dc.state.fl.us/pub/annual/1516/FDC_AR2015-16.pdf. As to the delay that State Attorney Ayala cited in finality for the victims of violent crimes, the unfortunate statistic is that the average time between offense and execution is 17.4 years. Id. at 36; see Interview of Aramis Ayala, WFTV Channel 9 (Mar. 15, 2017), at 6.
According to DOC, there are currently 365 defendants on death row. Fla. Dep't of Corrections, Offender Information Search, http://www.dc.state.fl.us/OffenderSearch/deathrowroster.aspx (July 17, 2017). Amici Curiae state that since the United States "Supreme Court approved the

Attorney Ayala did not make her decision based on personal opposition to the death penalty or "emotion."

State Attorney Ayala's decision was well within the scheme created by the Legislature and within the scope of decisions State Attorneys make every day on how to allocate their offices' limited resources. Because State Attorney Ayala's decision was within the bounds of the law and her discretion, Governor Scott did not have "good and sufficient reason" to remove her from these cases.

For these reasons, I would grant the petition for a writ of quo warranto and allow State Attorney Ayala to proceed in her constitutional role as the elected State Attorney for the Ninth Judicial Circuit. The Governor's decision in this case fundamentally undermines the constitutional role of duly elected State Attorneys. Accordingly, I dissent.

QUINCE, J., concurs.

---

reinstatement of Florida's death penalty in 1976 . . . less than half (only 33 of 67) of the counties [in Florida] have had executions, and 20 of Florida's 67 counties currently have no representation among Florida's death row." Amici Curiae Br. of the Am. Civil Liberties Union Found., Am. Civil Liberties Union of Fla., Florid[i]ans for Alts. to the Death Penalty, The Sentencing Project, & the NAACP Legal Def. & Educ. Fund, Inc. in Support of Pet'r Aramis Ayala, at 5. Further, "well over 40%" of the individuals currently on death row in Florida "were sentenced to death over twenty years ago," and " over 60 %—were sentenced to death over 15 years ago." Id. at 13 (citing Fla. Dep't of Corrections, Death Row Roster, http://www.dc.state.fl.us/activeinmates/deathrowroster.asp.) "Fifteen of the 23 death-row prisoners prosecuted in Ayala's circuit (comprising of Orange and Osceola Counties) were sentenced 15 years ago, or more." Id.

Original Proceeding – Quo Warranto

Marcos E. Hasbun and Mamie V. Wise of Zuckerman Spaeder, LLP, Tampa, Florida; and Roy L. Austin, Jr., and Amy E. Richardson of Harris, Wiltshire & Grannis, LLP, Washington, District of Columbia,

    for Petitioner

Pamela Jo Bondi, Attorney General, Amit Agarwal, Solicitor General, Jordan E. Pratt, and Jonathan L. Williams, Deputy Solicitors General, Office of the Attorney General, Tallahassee, Florida; and Daniel E. Nordby, General Counsel, and John P. Heekin, Assistant General Counsel, Executive Office of the Governor, Tallahassee, Florida,

    for Respondent

Shayan Elahi of Shayan Elahi, P.A., Winter Park, Florida,

    for Amici Curiae The Dream Defenders, Florida Immigrant Coalition, Let Your Voice Be Heard, Inc., Florida State Conference of the National Association for the Advancement of Colored People, The New Florida Majority, SEIU Florida State Council, Color of Change, and Advancement Project

Adam S. Tanenbaum, General Counsel and J. Michael Maida, Deputy General Counsel, Florida House of Representatives, Tallahassee, Florida,

    for Amicus Curiae The Florida House of Representatives

Arthur I. Jacobs, Richard J. Scholz, and Douglas A. Wyler of Jacobs, Scholz & Associates, LLC, Fernandina Beach, Florida,

    for Amicus Curiae Florida Prosecuting Attorneys Association

Mark Herron and Robert J. Telfer III of Messer Caparello, P.A., Tallahassee, Florida,

    for Amici Curiae Senator Oscar Braynon, Senator Jeff Clemens, Senator Perry Thurston, Senator Gary Farmer, Representative Janet Cruz and Representative Sean Shaw

Daniel J. Gerber of Rumberger, Kirk & Caldwell, Orlando, Florida,

    for Amici Curiae Family Members of Victims

Sharon L. Kegerreis of Berger Singerman, Miami, Florida; Donald B. Verrilli, Jr., Chad I. Golder, and Sarah G. Boyce of Munger, Tolles & Olson, LLP, Washington, District of Columbia; and Mark B. Helm, and John F. Muller of Munger, Tolles & Olson, LLP, Los Angeles, California,

    for Amici Curiae Former Judges, Current and Former Prosecutors, and Legal
    Community Leaders

Nancy G. Abudu and Jacqueline Nicole Azis of ACLU Foundation of Florida, Inc., Miami, Florida; and Brian W. Stull, Senior Staff Attorney of American Civil Liberties Union Foundation, Durham, North Carolina,

    for Amici Curiae American Civil Liberties Union Capital Punishment
    Project, the American Civil Liberties Union of Florida, Floridians for
    Alternatives to the Death Penalty, the Sentencing Project, and the NAACP
    Legal Defense & Educational Fund, Inc.

Seth Miller, President of Innocence Network, Innocence Project of Florida, Tallahassee, Florida; Norman Adam Tebrugge of Tebrugge Legal, Sarasota, Florida, and James C. Dugan of Willkie, Farr & Gallagher, LLP, New York, New York,

    for Amici Curiae The Innocent Network and Witness to Innocence

Ashley M. Litwin of Seitles & Litwin, P.A., Miami, Florida,

    for Amicus Curiae National Association of Criminal Defense Lawyers

Sonya Rudenstine, Gainesville, Florida,

    for Amici Curiae Victims' Service Providers and Homicide Victims' Family
    Members