■ Rosen's Café, LLC, Appellant, v 51st Madison Gourmet Corp. et al., Respondents. [986 NYS2d 51]—

Order, Supreme Court, New York County (Arthur F. Engoron, J.), entered on or about April 25, 2013, which, after a nonjury trial, directed that plaintiff recover the amount of $2,000 against the corporate defendant, and authorized defendants' counsel to release remaining monies held in escrow, less his fees, to defendants, unanimously affirmed, without costs.

Where the parties set down the terms of their agreement (for the sale of defendants' restaurant business to plaintiff) in a clear and unambiguous writing, the agreement should be enforced according to its plain meaning (*see generally W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). The trial court

appropriately found the controlling terms for reimbursing plaintiff purchaser for costs expended to cure fire department violations (¶ 16 of the agreement) to be clear and unambiguous. Language in a written agreement is deemed to be clear and unambiguous where it is reasonably susceptible of only one meaning (*see White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007]; *Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 60 AD3d 61, 66 [1st Dept 2008], *affd* 13 NY3d 398 [2009]). Here, where the purchaser's costs to cure the violations exceeded $2,000, paragraph 16 explicitly provided that either the purchaser could cancel the contract, or, if the purchaser did not cancel and elected to close on the agreement (which it did), the seller would only be obligated to extend to purchaser a $2,000 maximum credit as against the purchase price, and that the purchaser would otherwise waive any claims it had in regard to violations existing against the property at the time of contracting. While plaintiff argues there was no evidence offered to indicate it had formally elected to close on the restaurant purchase agreement, the parties' conduct, on this record, affords a basis to support the trial court's finding that plaintiff opted to close on the agreement to purchase (*see e.g. Horsehead Indus. v Metallgesellschaft AG.*, 239 AD2d 171 [1st Dept 1997]; *Matter of Shearer*, 94 AD3d 128 [1st Dept 2012]).

To the extent plaintiff argues that the parties provided for a $25,000 to $50,000 escrow amount to be held by defendants' counsel, and that such escrow bespeaks the parties' intent to fully reimburse plaintiff for its expenses to cure the violations, such argument is unsupported by the language in the relevant agreements and, in any event, such assertion is refuted by the specific "waiver" language in paragraph 16. Where the intent of the parties is clear from the unambigous language of the parties' agreements, resort to extrinsic evidence in an attempt to vary the terms of the agreements will not be countenanced (*see generally Schron v Troutman Sanders LLP*, 20 NY3d 430 [2013]; *Gladstein v Martorella*, 71 AD3d 427 [1st Dept 2010]).

To the extent plaintiff argues that the "all claims" language found in the indemnification agreement executed by the seller at the time of the closing should be broadly construed to provide that the purchaser can recoup its monies expended to cure preexisting violations against the premises, such argument is unavailing. As the trial court found, the fire department violation against the premises, inclusive of any fines and/or necessary costs to cure, did not constitute a "claim" against the corporate defendant at the time it owned the premises. Not only did paragraph 16 of the parties' agreement specifically address

the issue of preexisting violations against the premises along with the rights and obligations of the parties vis-à-vis such violations (*see Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42 [1956] [specific provision controls over the more generalized provision]; *see also E-Z Eating 41 Corp. v H.E. Newport L.L.C.*, 84 AD3d 401 [1st Dept 2011]), but the indemnification agreement, when fairly construed in relation to the terms in the parties' purchase agreement, should be construed so as not to obviate the waiver language in paragraph 16, and, if reasonable, to permit all the provisions in all the parties' agreements to be found effective and enforceable (*see Muzak Corp.*, 1 NY2d at 46-47). Thus, the trial court reasonably found that the parties intended that the "any claims" language in the indemnification agreement (as against the corporate defendant) pertained to pre-closing slip and falls on the property, food poisoning, and similar liability claims, but not fire department violations. Concur—Sweeny, J.P., Renwick, Saxe, Freedman and Richter, JJ.